# Court of Appeals.

November, 1904.

## THE PEOPLE v. WILLIAM H. DAVEY.

(179 N. Y. 345.)

CRIMES—RAPE—ERRONEOUS ADMISSION OF EVIDENCE.

Upon the trial of a defendant charged with rape upon the person of a girl twelve years of age, a case in which every precaution should be taken to safe-guard against the prejudice arising from the nature of the crime, it is reversible error—after excluding complainant's testimony as to what took place between defendant and another girl upon an occasion prior to the commission of the crime charged—to permit the complainant to state, against defendant's objection and exception, what she said on that occasion and to that girl in defendant's presence, where the remark, seemingly innocent and harmless when taken alone, was apparently full of suggestiveness and meaning when connected with the context of the testimony given by the complainant; nor is the error cured by the fact that the testimony was immediately stricken out, since there can be little doubt that the episode had produced the precise effect for which the evidence was offered.

People v. Davey, 94 App. Div. 612, reversed.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 31, 1904, which affirmed a judgment of the Niagara County Court, entered upon a verdict convicting the defen-

dant of the crime of assault in the second degree, and an order of said court denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

P. F. King and A. T. Hopkins for appellant. The conduct of the assistant district attorney in bringing forcibly before the jury facts and circumstances tending to prove that on a prior occasion the defendant committed another, but similar offense, with one Mamie Meyers, and the exceptions to the rulings of the court permitting such testimony against the objections of the defendant, presents reversible error. (People v. Carey, 148 N. Y. 489; People v. Ray, 36 App. Div. 389; People v. Doody, 72 App. Div. 388; People v. Fielding, 158 N. Y. 553; People v. Mull, 167 N. Y. 248; People v. Derhert, 138 Cal. 467.) The exceptions taken to the ruling of the court in permitting the assistant district attorney to ask, of his own witness, improper questions about other crimes present reversible error. (People v. Ray, 36 App. Div. 389; People v. Elliott, 163 N. Y. 11; People v. Coleman, 55 N. Y. 81.) The conduct of the prosecuting officer, in bringing and having several little girls in court, during the trial, requiring them to stand up before the jury, and, in the cross-examination of the defendant, asking him various questions calculated to inculcate into the minds of the jury that the defendant had committed other and similar offenses with each of those girls, and the exceptions to the ruling of the court, allowing such evidence, presents reversible error. (People v. Dorthy, 156 N. Y. 257; People v. Smith, 162 N. Y. 530; People v. Milkes, 55 App. Div. 372; People v. Derhert, 138 Cal. 467; People v. Bergen, 43 N. Y. S. R. 81; People v. Ray, 36 App. Div. 389; People v. Coleman, 55 N. Y. 81; People v. Thurston, 2 Park. Cr. Rep. 130; People v. O'Sullivan, 104 N. Y. 484; People v. Fitzgerald, 156 N. Y. 260.) The exception taken by the defendant to the charge of the court was well taken

and presents reversible error. (People v. Ball, 42 Barb. 325; State v. La Bore, 26 Vt. 705; Roberts v. State, 19 Ala. 526; State v. Beckwith, 1 Stew. 318; 1 Tyler, 295; State v. Beacon, 7 Vt. 219; State v. Baker, 34 Me. 52; Erwin v. State, 13 Misc. Rep. 306; State v. Harmon, 39 Me. 337; People v. Adams. 17 Wend. 475; Cook v. State, 11 Ga. 53.)

Burt G. Stockwell, District Attorney (Fred M. Ackerson counsel), for respondent. It was not legal error to ask defendant about other offenses with girls and boys produced in court. (People v. Webster, 139 N. Y. 84; Brady v. Nally, 151 N. Y. 260; People v. Krank, 110 N. Y. 490; People v. Conroy, 153 N. Y. 187.) The court did not err in charging the jury "that the time the offense was committed was immaterial." (People v. Jackson, 111 N. Y. 369; People v. Stocking, 50 Barb. 574; People v. Emerson, 53 Hun, 440; People v. Krank, 110 N. Y. 490; People v. Formosa, 131 N. Y. 478,) The judgment of the trial court should be affirmed. (People v. Taylor, 138 N. Y. 405; People v. Loppy, 128 N. Y. 629; People v. Trezza, 125 N. Y. 740; People v. Fish, 125 N. Y. 136; People v. Stone, 117 N. Y. 480; People v. Schuyler, 106 N. Y. 298; People v. Hoch, 150 N. Y. 299; People v. Sliney, 137 N. Y. 570; People v. Conroy, 153 N. Y. 185.)

WERNER, J.

The assault charged in the indictment and established by proof upon the trial, is one of those unnatural and revolting crimes which instinctively arouse sentiments of disgust and wrath in the breasts of normal men. The alleged victim was a girl twelve years old, and the alleged assailant was a married man forty-five years of age, the proprietor of an automobile garage, situated on one of the principal business

streets of the city of Niagara Falls. We shall deal with the nasty details of the alleged offense only so far as may be necessary in the discussion of the exceptions presented for review and, before proceeding with that discussion, it may be well to emphasize a few general observations that will serve to illustrate the direction which appellate scrutiny is sometimes compelled to take in cases of this character. It has come to be one of the accepted maxims of our jurisprudence that appellate courts will not be astute to find mere technical errors upon which to reverse judgments. There are cases, however, in which apparently technical errors may be so prejudicial as to produce the gravest injustice. This may be particularly true of a case in which a defendant, accused of an abhorrent and detestable crime, finds himself confronted at the very threshold of the court room, with that subtle, pervasive and almost ineradicable prejudice which the bare charge of such a crime may engender against him, in the minds of those who are to pass upon his guilt or innocence. This lurking possibility may become almost a probability when the charge is one which is calculated to arouse the parent to the dangers which beset his children in their necessary daily intercourse with those outside of the family circle. In such cases reason needs to be safeguarded from prejudice by everything that caution and justice can suggest, and courts should be firm and explicit in impressing upon district attorneys the necessity for strict adherence to rules of evidence and propriety of conduct so that jurors may, as far as possible, be unbiased and impartial.

The application of these general observations to the case at bar, leaves little room for doubt that some of the exceptions taken at the trial are so near the danger line, if not in and of themselves fatal, that they may properly be considered in connection with those which we think are serious enough to justify a reversal of the judgment herein.

The alleged assault is charged to have been committed at

the defendant's place of business, on or about the 22nd day of June, 1903. The direct testimony of the complainant strongly tended to show that the assault was committed on that day. On her cross-examination the complainant was even more explicit and positively fixed that date as the day of the occurrence. Upon her re-direct examination this was somewhat modified by the statement that she had no means of fixing the exact date, but no other date was mentioned. When the defendant presented his side of the case he showed conclusively that he was in Buffalo during the whole of the day of June 22nd, 1903, and, therefore, could not have been in Niagara Falls at the time and place of the alleged assault. As bearing upon that phase of the case, the learned trial court charged the jury, in substance, that if they should find that the defendant had in fact assaulted the complainant, it was immaterial whether it had been done "on the 22nd day of June, or any other day in June, or any day in May." While this was, doubtless, a correct general statement of the law as applied to a variance between the time. fixed in an indictment and that proven upon a trial, or to a case in which time is not of the essence of the crime (Code Crim. Pro. § 293 et seq.; People v. Krank, 110 N. Y. 488; People v. Jackson, 111 N. Y. 369), it was hardly a fair and explicit statement of the rule as it should have been applied to the facts of the case at bar. The only date definitely established by the evidence was that mentioned in the indictment, to wit, the 22nd day of June, 1903. While we cannot say judicially that the proof was such as to require a finding that the assault was committed on that day, or not at all, we cannot escape the conclusion that the evidence on this point was so direct and almost unequivocal (even after making allowances for the age of the complaining witness, the subject-matter of her testimony and the distracting influence of her environment in court upon her youthful mind) as to make the question of the time of the commission

of the alleged assault a most delicate and important one, upon the bearing of which, as determinative of the guilt or innocence of the defendant, the jury should have been most fully and carefully instructed. Instead of that, however, the learned trial court barely referred to the evidence tending to show defendant's absence from Niagara Falls at the time of the alleged assault, thus emphasizing rather than modifying the previous charge that the time of the commission of the alleged crime was of no importance. When a crime is clearly shown to have been committed the time of its commission may be purely incidental and insignificant; but when the question of time may be an important factor in determining whether a crime has been committed and when, as in the case at bar, there is a complete coincidence of the time specified in the indictment and fixed by the proof, it cannot be said that the matter of time is wholly immaterial, even if the evidence in relation to it is not clearly conclusive. While we should not feel warranted in reversing the judgment upon this exception alone, we have discussed it because it is one of the features which was apparently operative in giving the case a trend that seems to have been prejudicial to the defendant.

Another thing that was, we think, unfair to the defendant, and that must have been damaging in its effect upon his defense, was the production in court of several children of both sexes who were requested to stand up, one after another, in the presence of the jury during the cross-examination of the dafendant. After the latter had been asked if he knew these children, he was interrogated as to certain alleged unnatural and outrageous practices upon them. He denied all these, as of course the prosecuting attorney must have anticipated he would, and since his answers in reference to these collateral subjects were binding upon the prosecution, this branch of the case apparently ended there. But did it in fact end there? The spectacle of these child-

ren standing up in open court as silent accusers of a man charged with a nameless outrage upon a litttle girl, was more dramatic and eloquent than volumes of verbal testimony could have been. This theatrical appeal to paternal instinct and wrath left the defendant little, if any, hope for an impartial consideration of his defense. It is true, as suggested by the prosecuting officer, that when the defendant became a witness in his own behalf he laid himself open to attack from every point affecting his credibility or criminality (People v. Webster, 139 N. Y. 84), and, if the practice now under discussion involved nothing more than that, we should not attempt to criticise it. · The difficulty lies in the fact that the nature of the charge preferred against the defendant was, in itself, so likely to provoke passion and prejudice, that both court and prosecuting officer should have been careful to guard the defendant against anything that would tend to undue intensification of these sentiments. It is, of course, impossible to measure every development of a particular trial by some general rule, and it is not unusual for counsel, when examining a witness, to ask some person in the court room to stand up for identification. It may fairly be argued·that what may be done with a single individual may be repeated as often as occasion requires, and from that general proposition we are not prepared to dissent. We simply say that under the peculiar circumstances · of this case, this feature of the trial must have contributed to the creation of an atmosphere that was prejudicial to the defendant, and we may, therefore, examine other phases of the trial with closer scrutiny than would be necessary under different circumstances.

Another exception relied upon by the defendant is that taken to the refusal of the learned trial court to exclude the evidence of the complaining witness as to an occasion prior to the commission of the offense charged in the indictment, when the complainant and a girl named Mamie Meyers are

said to have visited defendant's place of business. When the court asked how that evidence could be competent the prosecuting officer said, "I propose to show what happened right then and there with this girl Mamie Meyers." After an intervening colloquy between counsel and court, in which it clearly appeared that the occurrence referred to took place on some date prior to that set forth in the indictment, and after the court had ruled that the witness should not be permitted to state what she had seen the defendant do to Mamie on the occasion referred to, although the question as clearly indicated the answer as though it had actually been given, the witness was permitted, under objection and exception, to state that she said to Mamie Meyers, in the presence of the defendant, "Good-bye Mamie, I am through with you." This remark, seemingly innocent and harmless when taken alone, is apparently full of suggestiveness and meaning when connected with the context of the testimony given by this witnesss. It is true that in the next breath this evidence was stricken out by the court, but there can be little doubt that the episode had produced the precise effect for which the evidence was offered. As this evidence was clearly incompetent it should not have been received, and, although it was subsequently stricken out, the insidious and damaging suggestion which it was intended to convey must have found lodgment in the minds of the jury.

The same method was pursued in the examination of the complainant's mother, who, in answer to a direct question as to whether the defendant had told her that he had taken other girls into his store and cellar, replied that he had said nothing about it. While this answer was not unfavorable to the defendant, the district attorney's question very distinctly conveyed the suggestion to the jury that here was a man who had made a practice of debauching young children. Similar questions have been condemned by this court.

(People v. Smith, 162 N. Y. 530; Cosselmon v. Dunfee, 172 N. Y. 507.)

Other questions are raised, but we forbear from further discussion, since enough has been said to indicate that we think the defendant did not have such a fair and impartial trial as he was entitled to. It must be admitted that the single exception that we have definitely laid hold of hangs by a very slender thread, and if it stood alone we should not deem it necessary to reverse this judgment. But when this exception is considered in the light of all the other prejudicial features of the trial our duty is obvious.

The judgment of conviction should be reversed and a new trial ordered.

MARTIN, J., concurs; BARTLETT and VANN, JJ., concur in the result; CULLEN, Ch. J., GRAY and HAIGHT, JJ., concur in the result on the ground of the refusal of the court to exclude the evidence of the complaining witness as to what she said to Mamie Meyers.

Judgment of conviction reversed, etc.