THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALBERT TASSIELLO, Appellant.

Argued January 13, 1950; decided April 13, 1950.

*Peter L. F. Sabbatino, Thomas J. Todarelli* and *Edward J. Fontana* for appellant. The assistant district attorney's statements in summation that he personally believed defendant guilty, that defendant and his counsel also knew that defendant was guilty, and other improper statements, over objection and exception, deprived defendant of a fair trial and of an impartial consideration by the jury of the evidence. (*People* v. *Robinson,* 273 N. Y. 438; *People* v. *Esposito,* 224 N. Y. 370; *People* v. *Teiper,* 186 App. Div. 830; *People* v. *Reimann,* 266 App. Div. 505; *Berger* v. *United States,* 295 U. S. 78; *People* v. *Gerdvine.* 210 N. Y. 184; *People* v. *Fowler,* 269 App. Div. 797; *People* v. *Fielding,* 158 N. Y. 542; *People* v. *Sheldon,* 156 N. Y. 268; *People* v. *Minsky,* 227 N. Y. 94; *People* v. *Manganaro,* 218 N. Y. 9; *People* v. *Millard,* 247 App. Div. 253; *People* v. *Maestry,* 167 App. Div. 266; *People* v. *Conrow,* 200 N. Y. 356.)

*Frank S. Hogan, District Attorney* (*Charles W. Manning* and *Whitman Knapp* of counsel), for respondent. I. Defendant received a fair trial. (*People* v. *Yui Kui Chu,* 273 N. Y. 191; *People* v. *Ohanian,* 245 N. Y. 227; *People* v. *Hartigan,* 210 N. Y. 144; *People* v. *Pindar,* 210 N. Y. 191.) II. Most of the prosecutor's remarks of which defendant complains were provoked by and made in answer to the intemperate statements of defendant's counsel. In the heat of argument, each side used strong language. (*People* v. *Gillette,* 191 N. Y. 107; *People* v. *Smith,* 180 N. Y. 125.) III. Viewing the summation of the assistant district attorney as a whole, and in the light of the closing comments by the defense, it is hardly likely that defendant was thereby prejudiced, particularly since, as already noted, defense counsel allowed most of the remarks to pass unnoticed and without objection or any motion calling for a ruling by the court. (*People* v. *Seidenshner,* 210 N. Y. 341; *People* v. *Jackson,* 196 N. Y. 357; *People* v. *Pallister,* 138 N. Y. 601.)

LEWIS, J. " Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a quasi-judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice." (*People* v. *Fielding,* 158 N. Y. 542, 547.) That pronouncement by this court is declaratory of the simple principle of fairness which was decisive in the cited case and pervades those rules which govern the administration of criminal law. In the case we now review that principle again becomes decisive.

Briefly, as to facts: The homicide here involved occurred on July 20, 1945, in New York City on the second floor of a mid-town restaurant. At that time and place the proprietor was accosted by three men who, after forcing him back into his office, took from a shelf $1,200 in paper currency. While making their escape in the midst of excitement caused by an outcry by the proprietor, one of the robbers — who was brandishing a revolver as he backed out of the restaurant — fired a shot which struck and killed a customer. Thereafter the defendant, apprehended in New Jersey, was brought back to New York City where, upon an indictment charging him with murder, first degree, he was tried and convicted of murder, second degree. At the Appellate

Division the judgment of conviction was affirmed, one Justice dissenting and voting for a new trial.

At the trial, where his defense was an alibi, and in the Appellate Division, the defendant unsuccessfully attacked the credibility of witnesses called by the prosecution to identify him as the killer. Upon the present appeal, as in the courts below, the defendant challenges rulings by the Trial Judge and asserts that he was not accorded a fair trial due to the following misconduct by the assistant district attorney which, it is claimed, prejudiced his rights before the jury:

Near the close of his summation the assistant district attorney commented upon portions of the defendant's testimony bearing upon his alibi which, it was suggested, showed the degree of confusion under which the defendant was laboring on the day of the homicide. In doing so the assistant district attorney made the following statement to the jury: " And Mr. Sabbatino [counsel for defendant], I am not going into the alibi, because he conceded in his summation here this morning that it was unbelievable; that De Lucia would say anything to help him out; that he was confused; that he had to pick somebody out. First it was De Lucia, then Parker, then back to De Lucia from Bender to Tinker to Chance, back and forth. And when we knocked down one story, it was another. When we would knock that down, it was another. Four or five different stories. The man was in. The defendant knows he is in. *His lawyer knows he is in,* and the only hope of saving his neck is the hope that they get a gullible jury, a soft-hearted jury, a jury that hates to face realities, and jurors who would like to go up dark alleys to find some phony excuse on which to base a reasonable doubt." (Italics supplied.)

At the close of that statement counsel for the defendant not only objected to " that kind of summation, as unfair, prejudicial to the defendant " but also moved for a mistrial. The objection thus taken was overruled and the motion for a mistrial was denied with an exception to the defendant as to each ruling.

Shortly thereafter, while commenting favorably upon the testimony of one of the People's witnesses who had identified the defendant as a customer he had seen in the restaurant where the homicide occurred, the assistant district attorney stated to the jury: " What's phony about that statement? What's phony

about identifying a man who has been a customer of yours and whom the defendant admits knowing. There is nothing phony about that at all. He picked out the right man, and you know it and the defendant knows it, *Sabbatino knows it. That's why he squeals so."* (Italics supplied.)

Following that statement counsel for the defendant again moved for a mistrial " on the ground he is seeking to mislead the jury." That motion was also denied with an exception to the defendant.

On the following morning when the court reconvened and before the Trial Judge charged the jury, an attempt was made to neutralize the statements quoted above which had been made by the assistant district attorney in the course of his summation. The record describes the incident as follows:

" Mr. Sabbatino: Your Honor, I ask the privilege of addressing the Court.

" The Court: Proceed.

" Mr. Sabbatino: Yesterday in his summation Mr. Monaghan [the assistant district attorney] said that I knew my client was guilty. I want the privilege of taking the stand and testifying that from the very first time that Mr. Monaghan had the case I have always urged the defendant's innocence. I have had frequent interviews with him and argued the facts with him without the knowledge of the existence of the police reports. I even asked —

" Mr. Monaghan: Your Honor, I object to further summation at this time.

" The Court: Do you withdraw any remark which you may have made which may have intended to convey the fact that —

" Mr. Monaghan: Yes, I do. If there is any remark which conveyed the idea to the jury that I thought Mr. Sabbatino knew that his man was guilty, I withdraw it because it is not what he thinks or what I think; it is what the jury think."

The recantation contained in the last sentence quoted above, when closely read, is somewhat limited by the reason expressly given for it. However, if it be regarded as a complete retraction by the assistant district attorney of statements made by him to the jury shortly before adjournment on the preceding day, viz., the statement that the *defendant's " lawyer knows he is in "* with an innuendo in those words which speaks for itself; and, on

a subject — important to the defense — of identifying the defendant, the further statement that *the defendant's lawyer " knows "* that a witness called by the prosecution " picked out the right man ", we cannot say with the assurance to be desired that such retraction afforded full protection to the defendant's rights.

Knowing, as we do, that statements, such as those now challenged, addressed to a jury by a prosecuting officer in the trial of a criminal case " * * * are apt to carry much weight against the accused when they should properly carry none" (*Berger* v. *United States,* 295 U. S. 78, 88; *People* v. *Conrow,* 200 N. Y. 356, 369), we cannot say, in the circumstances disclosed by this record, that there was erased from the jurors' minds what the prosecutor had said with earnestness on the previous day. Here, as in *People* v. *Levan* (295 N. Y. 26, 36) " The virus thus implanted in the minds of the jury is not so easily extracted."

The statements now challenged were not warranted by law, nor by the facts of record upon which alone a verdict was to be rendered. Assuming, as we must, that those statements, made during summation, were intended to have some influence upon the verdict, the jury might reasonably have inferred that the prosecuting officer intended thereby to make known his personal knowledge, gained from undisclosed sources, that defendant's counsel — who had then conducted the defense throughout nine trial days — had become convinced of his client's guilt. It is difficult to conceive of any statement by a prosecuting attorney which would have been more indelibly impressed upon a juror's mind.

The assertion by a prosecuting attorney of his personal knowledge of matters which may influence the jury's verdict should have no place in the record of a criminal trial. (*Berger* v. *United States, supra,* p. 88.) An offense against that rule is aggravated when, as in the present case, the prosecuting attorney, in his summation and without supporting evidence in the record, ascribes to counsel for the defendant knowledge of his client's guilt.

The defendant was entitled to a trial upon evidence proving or tending to prove the crime with which he was charged " * * * uninfluenced by irrelevant facts and circumstances

which tend to prejudice or mislead the jury." (*People* v. *Posner,* 273 N. Y. 184, 190; and see *People* v. *Robinson,* 273 N. Y. 438, 446; *People* v. *Fielding, supra,* pp. 546–553; *People* v. *Conrow, supra,* p. 369; *People* v. *Malkin,* 250 N. Y. 185, 201–202; *People* v. *Wolf,* 183 N. Y. 464, 472; *People* v. *Davey,* 179 N. Y. 345, 347–348.)

Our conclusion is that in moving for a mistrial in the circumstances outlined above the defendant was vindicating a right, not asking a favor. (*People* v. *Robinson, supra,* p. 446.) His exception to the denial of that motion was well taken and has enabled us to review that ruling as one of law. (*People* v. *Malkin, supra,* p. 199.)

The judgments should be reversed and a new trial ordered.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgments reversed, etc.