## (June 20, 1951.)

The People of the State of New York, Respondent, *v.* Harry Kay and Murray Fischel, Appellants.
The People of the State of New York, Respondent, *v.* Philip E. Nannery and Edward J. Cronley, Appellants.

*Per Curiam.* We agree that the credibility of Sylvia Glick and some of the other members of her family was impaired by their initial false statements, but that was a matter for the jury. The judgment of conviction, however, does not rest upon the testimony of the Glicks alone. Their testimony was in some

respects confirmed by testimony of disinterested witnesses. There was no dispute that the defendant police officers, Nannery and Cronley, had stopped the automobile, in which the foreign currency was being transported, and that they had accompanied the possessors down to the latters' office and spent a considerable period of time there. These defendants further admitted that a lawyer representing the Glicks had complained that they had extorted certain English pounds. Concededly, the officers made no official report of either the incident of the stopping of the car or the charge made against them by the lawyer. The reason assigned by the officers for stopping the car was certainly open to question.

The civilian defendants, Kay and Fischel, admitted that Kay was well acquainted with the police officer defendants, having met them frequently in restaurants and Madison Square Garden. Considering all the proof in the case, the jury was entitled to decide whether the intervention of these police officers was mere coincidence or the result of a conspiracy, and whether Kay and Fischel aided and abetted the extortion.

The cashing of the pounds by the civilian defendants shortly after the occurrence of stopping the car, and the fact that these defendants at first denied having the pounds, and the nature of their attempted explanation of these denials, constituted strong evidence of their guilt.

We find no reversible error in the admission of evidence, or the statement by the prosecutor in summation, or the charge of the court. The testimony of the lawyer, Solomon, was received without objection. The civilian defendants moved to strike it out after its receipt. That of Coyle was objected to only by Kay and Fischel, and its scope was properly limited. In some respects Solomon's testimony was helpful to the defendants. The prosecutor's statement in summation did not impugn the motives of the defendants or their counsel as did the statement of the prosecutor in *People* v. *Tassiello* (300 N. Y. 425). In any event, the trial court advised the jury that there was no evidence that the witness referred to had been coerced.

We think that the judgment of conviction should be affirmed.

DORE, J. (dissenting). In this case the charges made came originally from sources that were discredited at trial, from persons whose credibility was destroyed. Such persons also had the strongest motives of self-interest in making the charges at the time they were made, and in utter disregard of any sense of truth, honor, fairness or justice, they originally falsely accused these defendants of taking 8,400 pounds in English currency instead of 4,000, the charge made at the trial. At trial they admitted the falsity of the original charge made to the District Attorney. Testimony from such discreditable sources was necessary, in part at least, to sustain the verdict. In such a case it was most important that prejudicial remarks not based on any evidence before the court, should not have been made in an argument to the jury for defendants' conviction. We think the insinuations made in the summation of the assistant district attorney concerning the People's witness, Scott, were of this nature, prejudicial to defendants and clearly there was no evidence whatever in the record to sustain them. Neither appellants nor their counsel were responsible in any way for this conduct.

We are not left in doubt that the prejudicial remarks in question made a deep impression upon the jurors' minds; for, after the jury was out seven hours, the jury returned and asked to have Scott's original testimony to the District Attorney or Grand Jury read. As there was no such evidence in the record, the jury then asked if they could hear Scott's testimony at the trial

and it was read to them. The jury then retired and after two hours further deliberation found a verdict of guilty against all defendants. A motion was made to set aside the verdict specifically on the ground of the prejudicial statements in question. The detective defendants had a prior unblemished record personally and in their official capacity as police officers and had received commendation for exceptional service. Of the other two defendants, one of them had a prior conviction many years before. On the unique state of facts this record presents, we think in the interest of justice a new trial should be directed.

The judgment of the Court of General Sessions should be reversed and a new trial ordered as to all defendants.

Peck, P. J., Callahan and Van Voorhis, JJ., concur in *Per Curiam* opinion; Dore, J., dissents and votes to reverse and order a new trial, in opinion in which Shientag, J., concurs.

Judgments affirmed.