OPINION OF THE COURT
Joseph Jaspan, J.
The defendant Reginald Giese was tried before this court, without a jury, on consolidated indictments charging eight counts of illegal possession of a vehicle identification number (VIN) plate (Penal Law, § 170.70) and for violations of subdivision 3 of section 415 and section 418 of the Vehicle and Traffic Law for being an unregistered motor vehicle dealer.
At the close of the People’s case, I dismissed counts 4 and 8 *794 of the indictment charging illegal possession of VIN plates. The remaining counts are now determined as follows:
 The defendant raises issues as to the constitutionality and applicability of section 170.70 of the Penal Law contending that it is pre-empted by Federal statute, is vague as to form and does not embrace used cars manufactured in a foreign country.
Effective July 1, 1972, every manufacturer or assembler of a vehicle sold in New York State had to provide that vehicle with a VIN and inform the Commissioner of Motor Vehicles concerning the location or locations thereof (Vehicle and Traffic Law, § 431) and it became unlawful for any person or corporation to sell or offer for sale a motor vehicle if the original identification number had been destroyed, removed, altered, defaced or so covered as to be effectively concealed (Vehicle and Traffic Law, § 421).
Neither the Penal Law nor the Vehicle and Traffic Law define vehicle identification number. That definition is found in the Code of Federal Regulations (49 CFR 571.115) implementing the National Safety and Motor Vehicle Act ("Safety Act”) of 1966 (US Code, tit 15, § 1381 et seq.) which reads as follows:
"SI. Purpose and Scope. This standard specifies requirements for vehicle identification numbers to reduce the incidence of accidents resulting from unauthorized use.
"S2. Application. This standard applies to passenger cars.
"S3. Defínition. 'Vehicle identification number’ means a number consisting of arabic numerals, roman letters, or both, which the manufacturer assigns to the vehicle for identification purposes.
"S4. Requirements.
"S4.1 Each passenger car shall have a vehicle identification number.
"S4.2 The vehicle identification numbers of two vehicles manufactured by a manufacturer within a 10-year period shall not be identical.
"S4.3 The vehicle identification number of each passenger car shall be sunk into or embossed upon either a part of the vehicle (other than the glazing) that is not designed to be removed except for repair or a separate plate which is permanently affixed to such a part.
"S4.4 The vehicle identification number shall be located *795 inside the passenger compartment and shall be readable, without moving any part of the vehicle, through the vehicle glazing under daylight lighting conditions by an observer having 20/20 vision (Snellen) whose eyepoint is located outside the vehicle adjacent to the left windshield pillar.”
 While vehicle identification numbers are specified as part of the Federal standards established by Congress to promote motor safety (US Code, tit 15, § 1381), it does not necessarily follow that this area has been pre-empted by the "Safety Act”.
The pre-emption doctrine is set forth in People v Broady (5 NY2d 500) and summarized in Matter of Marino v Town of Ramapo (68 Misc 2d 44, 57) as follows: "The pre-emption doctrine requires State laws to defer to Federal legislation where either of three elements exist: (1) the scheme of Federal legislation is so complete and pervasive that no room is left for the State to supplement it; (2) the Federal interest is so dominant that State laws on the same subject must yield; or (3) the enforcement of the State statute presents a substantial conflict with the administration of the Federal program (Pennsylvania v. Nelson, 350 U. S. 497; Hines v. Davidowitz, 312 U. S. 52; People v. Broady, 5 N Y 2d 500, cert. den. 361 U. S. 8; see 16 Am. Jur. 2d, Constitutional Law, §§ 199-210; 9 N. Y. Jur., Constitutional Law, §§ 99-107).”
The promulgation of the safety standards cannot be said to be so pervasive of the area to prevent the State of New York from enacting and enforcing laws with respect to the illegal possession of VIN plates in aid of the effort to reduce the incidence of theft of motor vehicles or enhance powers of enforcement of the laws with respect thereto. Such legislation is not in conflict with the administration of the Federal program.
In fact, the Safety Act contains a pre-emption clause in subdivision (d) of section 1392 of title 15 of the United States Code and it prohibits the State from establishing any standard of safety which is not identical to the Federal standard except in a case not relevant here.
It would appear from the very language of the pre-emption clause that no broader application is intended.
The Penal Law of this State relates in section 170.65 to the forgery of a vehicle identification number and in its companion section 170.70 with illegal possession of a VIN plate — matters within the authority of a State Legislature and *796 not inconsistent with the purpose or language of the Federal "Safety Act”.
I find that section 170.70 of the Penal Law is neither unconstitutionally vague nor pre-empted by Federal legislation.
Nor can I conclude that this statute has no application to foreign made cars. Section 12.80 of title 19 of the Code of Federal Regulations (customs duties) provides that effective January 1, 1968 a car manufactured on or after January 1, 1968 is not permitted entry in the United States unless it conforms to the afore-mentioned safety standards or will be put into compliance.
The January 1, 1968 date has application to the obligations of a manufacturer. It does not exclude from the ambit of section 170.70 of the Penal Law those earlier cars which, in fact, do have such plates. All such vehicles and their VIN plates are subject to the limits and penalties of that section.
The defendant challenges the validity of a search and moves to suppress evidence seized which constitutes the basis for some of the charges contained in the indictment.
On March 3, 1977 police officers armed with a search warrant approached the defendant’s residence at 9 Wavecrest Drive, Mastic Beach, New York, with the intention of executing same.
The warrant described the object of the intended search as follows: "# 9 Wavecrest Drive, Mastic Beach, New York, occupied by Reginald B. Giese and Dieter Giese and of the persons of Reginald B. Giese and Dieter Giese and of any other person thereat or therein, for the following property: which is unlawfully possessed and concealed, to wit: 1. stolen property consisting of stolen motor vehicles, and any parts or components thereof. 2. motor vehicles and any parts or components thereof displaying vehicle identification numbers which have been destroyed, removed, defaced or so covered as to be effectively concealed. 3. documents, papers and records and any other paper writing pertaining to the ownership, registration, sale, transfer, shipment, receipt or title of the following motor vehicles, bearing New York registration numbers [various specific New York registration numbers].”
As the officers approached the premises, they observed one of the target vehicles, a white Mercedes Benz operated by the defendant was coincidentally backing out of the driveway. The *797 car was then stopped in the street and then returned some 100 to 200 feet to the premises and the search ensued.
The vehicle had been specifically referred to in the application in support of the warrant in the following manner: "a white four door Mercedes Benz bearing New Jersey registration plate number 781AZM. Your deponent determined that no New Jersey inspection sticker appeared on the windshield as required under New Jersey law, and no VIN tag appeared through the windshield on the dashboard.”
Although the car bore plates which were known to the police to have been reported as stolen and the defendant was an unlicensed driver, the car was stopped because it was believed to be of significant evidentiary value in the stolen car investigation then being conducted. The search of the vehicle resulted in the discovery of the several Mercedes Benz VIN tags in the glove compartment which form the basis for counts 1, 2 and 3 of the indictment. The police also concluded that the VIN tag which now appeared on the car was not typical of those made by Mercedes Benz and was fabricated. This tag forms the basis for count 5 of the indictment.
It is defendant’s position that the warrant did not authorize the search of the vehicle once it had physically left the premises described therein and that there was no basis for the stop and what must be regarded as a warrantless search.
State and Federal Constitutions provide that "no warrant shall issue, but upon probable cause * * * and particularly describing the place to be searched, and the person or things to be seized”. (NY Const, art I, § 12; US Const, 4th Amdt.)
In People v Rainey (14 NY2d 35, 38) the court wrote that the purpose of these provisions was to "avoid a 'blanket search’ with its obvious interference with the innocent * * * The purpose of the requirement for particularity of description of the place and the person and things to be seized is to provide adequate means of identification which is not met by a generality”.
In the instant case the "movable contraband”, the suspect vehicle, and the defendant driver were by the provisions of the warrant the persons or things to be seized. Was the search defective because the vehicle was leaving the identified premises? I hold that exigent circumstances extended the defined premises to the street location at which the car was stopped and that the search was constitutionally valid.
*798 It did not convert the defined area into a license to conduct a general search in violation of the Fourth Amendment. Further, such a conclusion is consistent with the holding in People v Kreichman (37 NY2d 693), which defined the so-called "automobile exception” and held that it may be seized and searched without a warrant if there is probable cause to believe that the vehicle contains contraband. By inference that exception should apply when there is probable cause to believe it is contraband.
A contrary conclusion would immobilize appropriate police action without in any way protecting any personal right to privacy.
Accordingly, the evidence seized will not be suppressed.
[Additional material omitted for the purposes of publication.]