UNITED STATES of America
v.
Dennis A. CALLAWAY, Cal
R. DeVyver
Cal R. DeVyver, Appellant.
No. 18746.

United States Court of Appeals,
Third Circuit.
Argued Feb. 2, 1971.
Decided July 15, 1971.

William S. Foss, Shanley & Fisher, Newark, N. J., for appellant.

Jerome L. Merin, Asst. U. S. Atty., Newark, N. J. (Frederick B. Lacey, U. S. Atty., by Marc L. Dembling, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN and VAN DUSEN, Circuirt Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

HANNUM, District Judge.

On June 23, 1966, appellant Cal R. DeVyver and his co-defendant Dennis Callaway were convicted by a jury on three counts of transporting stolen motor vehicles in interstate commerce in violation of 18 U.S.C. § 2312, and one count of wrongfully impersonating a diplomat in violation of 18 U.S.C. § 915. DeVyver was sentenced to a total of seven years imprisonment pursuant to 18 U.S.C. § 4208(a) (2).

On September 13, 1968, DeVyver filed a *pro se* motion to vacate his sentence, and on November 3, 1968, the district court denied the relief requested. On

appeal this Court affirmed the decision of the lower court, but found that the moving papers fairly raised a question of whether appellant had voluntarily waived his right to appeal. Because of the lack of evidence in the record on this issue, the matter was remanded to the district court for an evidentiary hearing. DeVyver v. United States, 413 F. 2d 254 (3d Cir. 1969).

On January 28, 1970, an evidentiary hearing was held where it developed that appellant, an indigent, had not been advised of his right to appeal following the imposition of sentence pursuant to the mandate of Fed.R.Crim.P. 32(a) (2). Accordingly the evidentiary hearing was terminated and DeVyver filed a motion to vacate sentence the following day.

On February 3, 1970, a hearing was held on this motion and the motion was granted. DeVyver was thereafter resentenced to a total of five years imprisonment pursuant to 18 U.S.C. § 4208(a) (2),[1] and this appeal followed.

The four grounds upon which appellant attacks the validity of his conviction are: (1) that there was insufficient evidence to convict appellant of unlawfully impersonating a duly accredited Canadian diplomat in violation of 18 U. S.C. § 915; (2) that his conviction was based upon evidence seized during an unlawful search of two automobiles conducted by the Canadian police in violation of his rights under the Fourth Amendment; (3) that the trial court improperly commented upon appellant's decision not to testify in his own behalf in violation of his rights under the Fifth Amendment; and (4) that he was denied due process of law by a cumulative series of errors committed by the trial court.

The relevant facts concerning De-Vyver's first contention are, briefly, that on June 20, 1968, he and Callaway were approached by a Paramus, New Jersey patrolman to whom it appeared that they were attempting to pick the lock on certain closed premises. In response to the patrolman's initial inquiry concerning their suspicious activities, DeVyver indicated that he was a diplomat. When the patrolman's superior subsequently arrived, DeVyver identified himself as a diplomat and produced appropriate supporting credentials. As a result of this successful impersonation, DeVyver and Callaway were released and permitted to leave without further incident or inconvenience.

■ DeVyver contends that Section 915 proscribes not merely the act of impersonating a foreign diplomat, but rather the pretension of being a foreign diplomat "duly accredited as such to the United States." Appellant contends that there was a failure of proof in the government's case as to this specific element of the crime.

While DeVyver did not actually indicate that he was attached to a particular American Mission during the course of his successful attempts to convince the Paramus police that he was entitled to diplomatic immunity, it is clear that he intended to use diplomatic privilege as a shield against the law. In fact, appellant's successful impersonation of a duly accredited Canadian diplomat allowed him to avoid lawful authority and obtain release from possible custody and arrest.

In Cortez v. United States, 328 F.2d 51 (5th Cir.), cert. denied, 379 U.S. 848, 85 S.Ct. 89, 13 L.Ed.2d 52 (1964), the court indicated that the false pretense of foreign diplomatic authority to obtain something of value was the primary evil that the statute sought to correct. Absent evidence to the contrary, any misrepresentation designed to obtain something of value implies the representation that the status, which would produce the thing of value sought, exists in the person making the misrepresentation. The evidence in the present case clearly established that DeVyver's conduct was in

---

1. Because he received maximum credit for "good time" while serving his sentence, DeVyver was subsequently released from custody.

direct violation of this purpose. Accordingly his conviction under Section 915 is valid and must stand.

DeVyver's second contention involves the propriety of the warrantless searches of two automobiles conducted in Toronto, Canada by the Toronto police. It appears that on July 19, 1965, DeVyver and Callaway, while riding in a 1963 Jaguar, were stopped by members of the Toronto police. They were taken to police headquarters for questioning concerning their sale in Toronto of a certain stolen Volkswagen and the possible status of the Jaguar in which they were riding. Upon arriving at police headquarters the Jaguar was parked in an adjacent lot and was locked by defendant Callaway. Shortly thereafter when Callaway was required to empty the contents of his pockets the police obtained the key and searched the car.

Later that day, upon information they had received during their investigation, the police visited the temporary Toronto residence of the defendants and searched a Chevy II station wagon which was found there. This vehicle was then immediately impounded.

The officer from the Toronto police department who testified at appellant's trial indicated that he had learned of the existence of the Volkswagen on July 8, 1965, from the used car dealer to whom the defendants had sold the car. He observed that a false registration plate had been affixed to the Volkswagen by "pop rivets." He also indicated that they had been investigating both the Jaguar and the Chevy II prior to the date that the searches were conducted and that they suspected that these two automobiles were also stolen.

DeVyver contends that these searches were conducted without the requisite probable cause and therefore, that the items seized were improperly admitted into evidence over objection. This argument is grounded upon the testimony of the officer from the Toronto police, that they did not in fact know that these vehicles were also stolen at the time that they were searched. He testified that they had been investigating these vehicles and "had suspicions" that they were stolen. From this DeVyver argues that mere suspicion does not constitute probable cause, and thus the searches were invalid.

However, we need not determine whether the Toronto police had probable cause to search the vehicles in question. This is because the challenged searches occurred in a foreign country, were conducted by foreign law enforcement officials who were not acting in connection or cooperation with domestic law enforcement authorities and the conduct involved was not the type that would shock the conscience of our courts. Accordingly, the exclusionary rule of the Fourth Amendment is not applicable to the present situation. United States v. Nagelberg, 434 F.2d 585, 587 (2d Cir. 1970), cert. denied, 401 U.S. 939, 91 S. Ct. 935, 28 L.Ed. 219 (1971); Brulay v. United States, 383 F.2d 345 (9th Cir.), cert. denied, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967); Stonehill v. United States, 405 F.2d 738 (9th Cir. 1968), cert. denied, 395 U.S. 960, 89 S. Ct. 2102, 23 L.Ed.2d 747 (1969); Birdsell v. United States, 346 F.2d 775, 782, n. 10 (5th Cir. 1965).

DeVyver's third contention involves the question of whether the trial court improperly commented in the charge upon his failure to testify in his own behalf. This alleged improper comment occurred during an explanation of the manner and methods by which the jury may gauge the credibility of the witnesses. The applicable portion of the court's instructions reads as follows:

"Perhaps you will be interested if the Court explains to you how you might go about deciding the credibility that you attach to the testimony of the various witnesses. Of course, there are many norms and many tests that you might use. But, of course, members of the Jury, some of the tests that you may use at your consideration of whether or not such witness

who testified before you is capable of knowing thoroughly about the thing which he or she testified to, whether one or more witnesses were actually present at the transaction testified to, and whether or not such witness or witnesses paid sufficient attention to qualify himself or herself as a reporter and whether such witness or witnesses honestly reported the affair fully as he or she knew it without any purpose or desire to deceive or suppress or to add to it. And you may take into consideration, members of the Jury, the appearance and the conduct of the witnesses, whether evidence is in the case or whether it is not in the case, *whether it is disputed or whether it is not disputed,* and you Jurors are to be controlled only by your own recollection in those matters." (T329–330) (emphasis added).

From the above emphasized phrase, DeVyver argues that since neither he nor his co-defendant elected to testify, this type of comment indirectly and improperly focused attention upon this fact and thus violated his rights under the Fourth Amendment. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); United States ex rel. Mitchell v. Pinto, 438 F.2d 814 (3d Cir. 1971).

This argument, however, is premised upon the assumption that *only* he and his co-defendant *themselves* could have contradicted the government's witnesses. See Linden v. United States, 296 F. 104 (3d Cir. 1924). This is not the case. DeVyver could have presented and offered into evidence such documents as bills of sale, cancelled checks, automobile registration cards and certificates of title to establish legitimate and bona fide purchase and ownership of the vehicles in question. DeVyver produced no such documents.

In addition, we note that shortly after the phrase in question, the trial court specifically charged on this very point:

"In this particular case, members of the Jury, you probably have observed that the defendants did not testify. They did not give their version of the charges made against them. Of course, the law does not compel a defendant to take the witness stand and to testify. And no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify.

"Members of the Jury, I want to impress that upon you. Under our system of law, no defendant is compelled to testify and no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of such witness or witnesses not to testify." (T331–332)

Accordingly we conclude that this contention too must fail.

Finally, DeVyver contends in "shot gun" fashion that he was denied due process of law by a cumulative series of alleged errors.

While it is true that this Circuit has held that the cumulative effect of trial errors may impinge upon an individual's right to fundamental justice, United States ex rel. Drew v. Myers, 327 F.2d 174 (3d Cir. 1964), we have carefully reviewed the entire record in this matter and find this not to be the case. While perhaps the government's case could have been presented in a more coherent fashion, the jury was carefully instructed on each element the government was required to prove for each offense charged in the indictment. The record as a whole reflects that appellant received a fair trial.

Accordingly, the judgment of the district court will be affirmed.