369 A.2d 493
COMMONWEALTH of Pennsylvania,
Appellant,

v.

Vincent A. BENNETT.

Superior Court of Pennsylvania.

Argued Sept. 9, 1975.

Decided Nov. 22, 1976.

458

---

Stephen B. Harris, First Assistant District Attorney, Warrington, for appellant.

Arthur R. Sagaskin, Assistant Public Defender, Doylestown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The appellee was indicted on October 8, 1974, for violation of The Controlled Substance, Drug, Device and Cosmetic Act.[1] Appellee's pretrial motion to suppress

---

1. Act of April 14, 1972, P.L. 233, No. 64, § 1 (35 P.S. § 780–101) et seq.

evidence was granted by the lower court on November 28, 1974, and the Commonwealth appeals that determination. We find the suppression was improperly granted and will, therefore, reverse the lower court's order.

The facts indicate that as part of a drug investigation, the Superior Court of New Jersey authorized a wiretap on a telephone terminal located within that state. This New Jersey investigation was initiated, in large part, on information supplied to New Jersey law enforcement officers by Pennsylvania State Police Officer Kenneth Anthony. The surveillance, conducted entirely within the boundaries of New Jersey, was in effect from February 8, 1974, until February 23, 1974, and all telephone conversations to and from the monitored terminal during this period were recorded. The order authorizing the wiretap also provided for full disclosure of information obtained to Pennsylvania law enforcement authorities who had aided in the investigation.

This New Jersey surveillance revealed that telephone calls were received from and made to appellee at his home address at 143 Walnut Terrace, Middletown Township, Bucks County, Pennsylvania. Based on this information, on February 25, 1974, Trooper Anthony secured a warrant to search appellee's house and automobile. The search uncovered a blue suitcase containing marijuana residue, cigarette papers, a plastic bag of marijuana, a "smoking" pipe, a small scale, a "hash" pipe, a red notebook containing a list of prices, a can containing marijuana, and a large note pad with notations, presumably relating to drug sales.

This case of first impression requires a determination of whether this information from a foreign jurisdiction may be used to support a search warrant in Pennsylvania. The answer to this question will, in turn, determine the admissibility of the evidence secured under the Pennsylvania search warrant. We must conclude that the use in this Commonwealth of information secured through a

valid, legal, properly authorized wiretap in a foreign jurisdiction is not in contravention of the Pennsylvania anti-wiretapping statutes,[2] and that the evidence seized in Pennsylvania under such a warrant is admissible. To reach any other conclusion would result in an unwarranted extension of the exclusionary rule set forth in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The information in question was derived through a wiretap legally authorized by the Superior Court of New Jersey pursuant to the provisions of the New Jersey Wiretapping and Electronic Surveillance Control Act.[3] While it is conceded that this information could not have been legally obtained under the laws of this Commonwealth had the wiretap occurred within our boundaries, this fact has no effect on information obtained in a sister state.

It is, of course, obvious that the courts of this Commonwealth have absolutely no power to control the activities of a sister state or to punish conduct occurring within that sister state. The legislature of New Jersey has determined that wiretapping, in appropriate circumstances and for proper cause shown, will be permitted within its borders. Thus, the information involved in the appeal before us was obtained by the New Jersey Police under a legal authorization. A conclusion that denies the exchange of information between law enforcement agencies of our Commonwealth and those of our sister states cannot be justified. The overriding public policy must be to allow such an exchange, for public policy, in the absence of legislative mandate, must favor the interest of the public by fostering its protection through the detection and apprehension of those who persist in

2. 18 Pa.C.S. § 5701, *et seq.*
3. N.J.S.A. 2A:156A–1, *et seq.*

defying our laws. This is particularly true in the case of major interstate drug dealers whose activities wreck the lives of so many people in this country today. We certainly must extend to all people the protection of constitutional safeguards, but to extend such protection, on the instant facts, would be an unwarranted extension allowing procedure to emerge victorious over justice.

It cannot be denied that the Pennsylvania anti-wiretapping statutes proscribe certain activities and declare illegal the evidence obtained from those specified activities within the borders of this Commonwealth. However, nowhere in these legislative enactments are we able to find, either specifically or by inference, a legislative mandate that extends to the activities before us. The legislature, by the enactment of these statutory proscriptions, has clearly spoken its intention. It is the duty of the courts of this Commonwealth to interpret and enforce that intention. It is not, however, a part of the judicial function to extend and amend the legislation here involved by drafting an amendment to that legislation which declares *all* wiretap information and evidence secured thereunder illegal *wherever* and *however* it may be obtained. Had the legislature so intended, it would have been a matter of no difficulty, by the use of a few simple words of English, to so declare it.

If the legislature of a sister state or foreign jurisdiction determines that wiretapping will be permitted within its borders, we will not, under the present laws of Pennsylvania, question that decision. Nor should we hinder our law enforcement agencies by needless restrictions upon their use of information and evidence that properly comes to their attention.

The case cited by the appellee as most closely resembling the appeal before us is *People v. Jones,* 30 Cal. App.3d 852, 106 Cal.Rptr. 749 (1973). In that case, the wiretaps were conducted by a United States Attorney in California under authorization granted by a Federal Dis-

trict Court pursuant to a federal statute. Hence, the evidence was legally obtained under federal law. This evidence was turned over to a California district attorney, but was later ordered suppressed. The state court made the observation that the purpose of the federal law is not to circumvent state law, but to allow the states to supplement the law, provided the states do not make their requirements more permissive than the federal law. The California decision found the state statute to be more stringent than the federal law. It is important to note that all of the activities there considered occurred *within* the boundaries of California, and nowhere therein is an indication of California's direction on facts such as are now before us. We find this point sufficiently distinguishes *Jones* from the case at bar to make it inapposite as precedent.

No useful purpose whatsoever would be served by denying the Commonwealth the use of this information when applying for a search warrant. We would not chastise errant law enforcement agencies or officers and we are not dealing with scoundrels who would use this information to the detriment of our citizens. We would not influence future wiretaps in New Jersey. Pennsylvania police officers did not participate in any manner in the securing of this wiretap or in the resulting New Jersey surveillance. No law of this Commonwealth was violated, and the rights of our citizens were not infringed.

The order of the lower court suppressing the evidence is reversed.

CERCONE, J., files a concurring opinion.

VAN der VOORT, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion in which JACOBS, J., joins.

SPAETH, J., files a concurring and dissenting opinion.

CERCONE, Judge, concurring:

I join in the majority opinion, but I wish to expand on the discussion of some points raised in the dissenting opinion by Judge Hoffman. The dissent states that by barring the use of wiretap evidence lawfully obtained in another state, and the fruits thereof, we would secure the public policy of Pennsylvania which declares the use of wiretaps illegal as an intolerable encroachment upon our citizens' right to privacy. I fail to see how. In point of fact, the only interest which the result proposed by the dissent would protect is the criminal's interest in not having highly probative evidence used against him in a criminal prosecution. The dissent admits that today's decision can have no affect on New Jersey's continued use of its own wiretap statute, even with respect to Pennsylvania citizens; yet, the dissent persists with the notion that its decision would safeguard the right of privacy of Pennsylvania citizens. One's right to privacy is encroached upon when the wiretap occurs, not when criminally inculpatory evidence is used against him in a criminal proceeding. Even if the proposed dissent were adopted by the majority today, the news media certainly could use this suppressed information to declare to the world that Mr. Bennett trafficks in narcotics; but, we would be holding that the courts of law may not hear the evidence of that illegal conduct lest we encroach upon his privacy. Both practically and legally I see nothing to commend that conclusion.

Furthermore, the dissenting opinion's analysis distorts the policy of this Commonwealth to achieve a wholly undesirable result. Certainly, no one would suggest that we have an anti-wiretap law in order to safeguard the "right" of criminals to effectively carry out their criminal designs. Rather, what our legislature has deter-

mined is that there is no effective way to determine in every instance in advance whether a telephone conversation will relate wholly or even partially to criminal matters. Reading on in Mr. Fineman's speech before the legislature in 1957, quoted in part in the dissenting opinion, that point becomes altogether clear:

> "Even the proponents of a modified form of wire tap admit that wiretapping is at best a dirty business. *Although I recognize that we must strike some sort of balance, between the interests of the public and the right of the individual,* no matter how delicate that balance may be we cannot sacrifice individual right when the end does not justify it.
>
> . . . . . . . .
>
> "The thing that is most offensive about wire tapping is the fact that *wire tapping has as a necessary result an extensive intrusion on the right of privacy of innocent persons.* When a tap is placed on a wire, that tap is maintained day and night, 24 hours. Every conversation, no matter how foreign to the stated objective of the wire tap, is heard. Every conversation, no matter how confidential, how intimate, whether it concerns professional advice, business or confidential matters, is laid bare. Every conversation to the phone where the tap is placed is overheard. Every conversation from the phone where the tap is placed is overheard.
>
> "I respectfully submit it would be a severe intrusion on our right of privacy to give the police even this limited right of wire tap . . . ." [Emphasis added.][1]

Thus, the legislature determined that no matter how stringently it restricted the use of wiretapping there would be instances where personal, and even intimate,

1. 2 Legislative Journal 1686–87 (1957). Interestingly, the arguments of Mr. Fineman and his colleagues were unpersuasive that day, since the House of Representatives thereafter voted to approve a draft of the legislation allowing exceptions for various forms of previously court-approved wiretaps, as does New Jersey, by a vote of 128 to 61. *Id.* at 1691–92.

conversations were overheard and recorded. This being the case, the legislature ultimately determined that the right and expectation of privacy is too dear to be subrogated in these circumstances to the need to use wiretapping to ferret-out criminal activity. I have no quarrel with this policy determination which, of course, rests soundly in the discretion of the legislature. What I do strongly disagree with is the dissent's proposing to use this determination to protect, and protect alone, those conversations which, if it could have, the legislature would have permitted to be monitored—criminal conversations. The dissenting opinion does not suggest, as it logically could not suggest, that New Jersey law enforcement agencies will desist from overhearing conversations between Pennsylvanians and New Jersey citizens. Nor will it cease to use such evidence to prosecute for criminal activities carried out in New Jersey. Hence, even if the dissenting opinion were adopted, no Pennsylvanian could speak over the telephone to a person in New Jersey absolutely secure in the knowledge that his conversation was not being monitored. But, a Pennsylvania criminal could do so secure in the knowledge that he could not be prosecuted for the Pennsylvania criminal activities which he divulged. Hence, the dissenting opinion, rather than advancing Pennsylvania public policy, in a more discrete sense would retard it. While affording no protection whatever to the legitimate interests of "innocent" Pennsylvanians, it would allow Pennsylvania criminals to operate over the telephone virtually unencumbered. That is hardly employing the balancing test of which Mr. Fineman spoke, and I cannot subscribe to any such rationale, especially when it is conjured in the name of public policy. Since we cannot enjoin New Jersey from monitoring innocent, interstate conversations of our citizens, we should at least attempt to reap the benefits of those conversations which our legislature would seek to monitor if more discriminating methods of predicting their occurrence were available.

466

VAN der VOORT, Judge, concurring:

I strongly support the rationale and thoughts expressed in the opinion authored by Judge Price. I not only believe it improper for our Courts to exclude evidence obtained lawfully in one of our sister states, but feel that the legislators in our Commonwealth should reexamine our own laws with respect to wire-tapping.

There has been a great advancement in technological progress in the field of communications. Organized crime networks, such as those involved in our horrible drug traffic, have to make use of communications to advance their illegal schemes, and they certainly must and do take advantage of improvements and sophistication in communications techniques. The need for fast and unhampered communications is the "Achille's heel" of organized crime and their interception offers the only hope of society's being able to cope successfully with it. I believe that a careful balance can be struck which would permit our law enforcement officials to make controlled interceptions of such communications, while preserving the principles of privacy which we all hold so dear.

Our federal statutes permit wiretapping and other mechanical interception of wire and oral communications in limited circumstances and with stringent safeguards. See 18 U.S.C. § 2510 *et seq.* Similar concepts, with provisions for court authorization upon appropriate application and oath by a highly responsible Commonwealth official, such as the Attorney General, deserve strong consideration by our legislature.

Our law enforcement personnel must be afforded the modern tools necessary to repair the havoc caused our society by those who flaunt our criminal laws in ever increasing numbers and ways. While the constitutionally mandated rights of all citizens must be zealously protected, a balance between those rights and effective law enforcement is both possible and necessary. The ability of law enforcement personnel to intercept oral communica-

tions, with strong safeguards to protect individual liberties, can be provided for in our statutes. I strongly urge our legislators to consider such steps.

HOFFMAN, Judge, dissenting:

Pursuant to information based on a wire-tap conducted by the New Jersey police, Pennsylvania police swore out a warrant authorizing a search of appellee's home. The lower court granted appellee's motion to suppress evidence seized during the execution of the warrant. The appellant, the Commonwealth of Pennsylvania, contends that the use of this wiretap information was legal.[1]

On February 25, 1974, Pennsylvania State Trooper Kenneth Anthony filed before a Bucks County justice of the peace an affidavit in support of a warrant to search "[a] two story frame and yellow stucco, and partial stone front dwelling, located at 143 Walnut Terrace, Middletown Twp., Langhorne, Penna. and a yellow Dodge . . . parked in the driveway . . . ." Trooper Anthony's affidavit revealed the following factual history: During the course of a 1972 investigation of a major interstate sale of marijuana, Anthony received information from a confidential informant that Lee Philip Hartshorn, residing in East Amwell Township, New Jersey, was involved in drug trafficking. Anthony gave that information to Detective Kenneth Harding of the New Jersey State Police who, according to the affidavit, conducted an "independent investigation." Based on the tip and his own investigation, Detective Harding obtained authorization on February 8, 1974, for a wiretap of Hartshorn's telephone as provided by the New Jersey Wiretapping and Electronic Surveillance Control Act.[2]

---

1. The Commonwealth does not have sufficient evidence to bring the appellee to trial absent the suppressed evidence. Therefore, the order is final and the appeal is proper. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). Cf. *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975).

2. N.J.S.A. 2A:156A–1 et seq.

On the same day, a tap was placed on the telephone located at the New Jersey address. In fact, the number was listed under the name of William Rogers, who apparently shared the residence with Hartshorn. During the next fifteen days, the effective period of the court's order, the New Jersey police conducted a twenty-four hour a day wiretap. Appellee was one of the people implicated in conversations with Rogers.[3] The police recorded calls made to appellant by Rogers as well as calls by appellant from his home in Pennsylvania to Rogers.

The New Jersey Superior Court's order stated that ". . . good cause having been shown, the contents of any intercepted wire communications obtained pursuant to this Order, or evidence derived therefrom, may be discharged [to] appropriate law enforcement personnel in Pennsylvania who have provided information during the course of this investigation." Because the New Jersey investigation originated with Pennsylvania Trooper Anthony's tip, Detective Harding gave Anthony the summaries of the wiretaps. Based on that evidence, Anthony swore out the contested warrant on February 25, 1974.

On the same day, the police stopped the appellee as he left his home on his way to work. He was told that he could proceed to work, but that the police were going to search the premises. The search resulted in the seizure of a blue suitcase containing a residue of marijuana, cigarette papers, a plastic bag of marijuana, a "smoking" pipe, a small scale, a "hash" pipe, a red notebook containing notations of prices, a tin can containing marijuana and a large note pad with notations, presumably relating to drug sales.

3. For example, the summary of a conversation on February 19, 1974, includes the following: ". . . Benji [William Rogers] says that he will charge for a straight 25 pounds—Benji tells Vince [appellee] that he owes him (Benji) for '35'—Vince states that it will be '3375' (dollars) (known to your affiant that 25 lbs. of marijuana, selling at a going rate of approx. $135.00 per lb. will equal as a cash price, approx. $3375.00)."

On October 8, 1974, the grand jury indicted appellee on charges of possession of a controlled substance and possession with intent to sell a controlled substance. The lower court heard appellee's motion to suppress the physical evidence on November 14, 1974, and granted the motion on November 28.

Both in the court below and on appeal, the litigants have focused on the constitutionality of the New Jersey wiretap. Because we believe that § 5703 of the Crimes Code [4] is controlling in the instant case, we do not reach the constitutional question.[5]

Section 5702 of the Crimes Code provides in part, that "[a] person commits a misdemeanor of the second degree if he:

"(1) intercepts without permission of the parties to the communication a message or other communication by telephone or telegraph;

"(2) installs or employs any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this chapter; or

"(3) divulges or uses without the consent of the sender or receiver the existence or contents of any such message or other communication if the actor knows that the message was illegally intercepted, or if he learned of the message in the course of employment with an agency engaged in transmitting it." Section 5703 provides for the exclusion of evidence seized in the course of a wiretap: "Except as proof in a suit or prosecution for a violation of this chapter, no evidence obtained as a result of a violation of privacy or breach of privacy of messages shall be admissible as evidence in any legal proceedings."

---

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1 et seq.; 18 Pa. C.S. § 5703, as amended 1974, Dec. 27, P.L. 1007, No. 327, § 3.

5. For a discussion of the constitutional issues raised by a continuous wiretap, see generally, *Minimization: In Search of Standards*, 8 Suffolk L.Rev. 60 (1973).

On its face, the statute prohibits the use of all evidence obtained as a result of a breach of privacy. The Legislature did not explicitly except evidence lawfully gathered by a breach of privacy by Federal authorities or law enforcement officials of another state under broader statutes.[6] The Commonwealth argues, however, that because the purpose of an "exclusionary" rule is to deter illegal police conduct, our courts should not exclude this evidence because the wiretap was legally conducted under New Jersey law.

I do not dispute that the constitutionally mandated exclusionary rule of *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is grounded in the notion that it deters illegal police conduct. "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). Thus, in situations in which exclusion would not alter police behavior, courts have not extended the doctrine. See, e. g., *United States v. Callaway*, 446 F.2d 753 (3rd Cir. 1971), (evidence seized by foreign police and subsequently proffered to United States authorities was admissible because our courts cannot hope to deter the conduct of foreign police); accord, *Brulay v. United States*, 383 F.2d 345 (9th Cir. 1967); *Barnes v. United States*, 373 F.2d 517 (5th Cir. 1967) (evidence seized by private person not acting in conjunction with police was held admissible in trial for criminal offense); accord, *Miramontes v. Superior Court*, 25 Cal.App.3d 877, 102 Cal.Rptr. 182 (1972); *People v. Randazzo*, 220 Cal.App.2d 768, 34 Cal.Rptr. 65 (1963).

6. See, e. g., Omnibus Crime Control and Safe Streets Act of 1968, Title III; 18 U.S.C.A. §§ 2510–2520, which permits a wiretap with consent of one party to the conversation and in certain other narrowly prescribed circumstance, with consent of neither party.

Section 5703 is not constitutionally mandated. Thus, it does not follow that the sole legislative purpose of the § 5703 "exclusionary" rule is the deterrence of police conduct. Rather, my view of the legislative history and prior case law convinces us that Chapter 57 of the Crimes Code expresses hostility towards all wiretapping [7] and that, except as limited by the Federal statute,[8] all Pennsylvania citizens are entitled to be free from its intrusion.

Two cases decided by our Supreme Court have addressed the Pennsylvania public policy behind the law governing the use of wiretap information.[9] In *Commonwealth v. Murray,* 423 Pa. 37, 52–53, 223 A.2d 102, 110 (1966), Justice MUSMANNO stated: "Were it not for the Act of 1957, irresponsible agencies could be emboldened to tap wires to obtain unauthorized information for the use of social scavengers, discredited business sharpers, and political buccaneers. They could pry into the most personal dealings and the most sacred relationships. . . . Without this guardian of our rights of privacy, every telephone user would have to conjure the possibility that the phantom hands of the electric eavesdropper could be clutching the very instrument into which he speaks. . . .

7. The 1974 amendments to Chapter 57, note 4, supra, have broadened the statute to permit wiretapping in certain narrowly defined situations, more in conformity with the Omnibus Crime Control Act. However, the amendment had not yet been enacted when the instant case arose, and would have no relevance to the instant holding even if in effect at that time.

8. We do not contend that Federal authorities cannot wiretap the phone of Pennsylvania citizens even within Pennsylvania under the Omnibus Act, supra. Cf. *United States v. Jones,* 369 F.2d 217 (7th Cir. 1966). However, the field of possible legislation is not pre-empted by the Act. See *Benanti v. United States,* 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957); *People v. Broady,* 5 N.Y.2d 500, 186 N.Y.S.2d 230, 158 N.E.2d 817 (1959); *Criminal Law— Federal Pre-emption,* 14 Santa Clara L.Rev. 159 (1973).

9. Both of the cited cases deal with the law prior to the new Crimes Code. However, the Penal Code provisions, Act of July 16, 1957, P.L. 956, No. 411, § 1, 18 P.S. § 3742, are the same as the new Code.

"Wire-tapping does not end with the mere listening operation. After the wire-leech has sucked in the blood of guarded secrets, he is then in a position to blackmail his unwary victim. He is in a position to traffic with corruption, threats and ill-gotten gains. That such a potential infamy could be tolerated in the name of the enforcement of the law would be the most extraordinary paradox in these paradoxical lines.

"The Pennsylvania Legislature has recognized all these perils and has legislated against them. It becomes the duty of the Courts to apply that legislation so that the Peeping Toms, the Paul Frys and the Meddlesome Charlies may not put to naught *the expressed will of the people in defending the dignity of man, the sanctity of family communication, and the liberty of its citizens.*" (Emphasis added).

In *Commonwealth v. Papszycki*, 442 Pa. 234, 236, 275 A.2d 28, 29 (1971), the Court held that "a person other than a receiver can [not] testify as to the contents of a telephone conversation if he overheard the call by means of an amplification device without the consent of the caller." The Court noted that Pennsylvania's prohibition against the use of wiretap evidence is absolute. "[T]he Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping. Such a determination, when within constitutional limits, is solely within the discretion of the Legislature." 442 Pa. at 239, 275 A.2d at 30.

A review of the legislative history of the 1957 act, reenacted in Chapter 57 of the Crimes Code, supra, reveals a similar uncompromising attitude towards the evidentiary use of wiretap information. During the debate, Representative FINEMAN stated that " . . . if the police can effectively undertake to do their work without the aid of wiretapping, then we should not give them

such a right, when *giving them such a right means such an insidious invasion of the rights which have been guaranteed to us*, the right to be secure in our homes, in our personal thoughts and in our personal papers." Legislative Journal, 1957, Vol. II, p. 1686. (Emphasis added). Other representatives expressed concern that wiretapping was a substitute for good police work,[10] and that such a practice is contrary to our basic concept of freedom.[11] The history indicates that the Legislature did not seek primarily to deter the police, but rather intended to protect Pennsylvania citizens' privacy from any electronic intrusion.

While research has revealed no case precisely on point, the California Supreme Court has recently resolved an analogous problem. In *People v. Jones*, 30 Cal.App.2d 852, 106 Cal.Rptr. 749 (1973), the United States Attorney received twenty tapes recorded pursuant to a wiretap authorized under the Omnibus Crime Control Act, supra. The U. S. Attorney then gave the tapes to the San Diego District Attorney who then presented them to a grand jury. The evidence was suppressed and the Court in *Jones* upheld the suppression under the California Penal Code, § 631, which is identical to §§ 5702 and 5703. After holding that the Omnibus Crime Control Act does not pre-empt the field of legislation, the Court held that the state's prohibition was absolute and despite the legality of the wiretap under federal law, that legali-

---

**10.** See, e. g., comments by Miss DUFFY: ". . . I do not think we need [wiretap evidence] . . . I think it is merely a substitute for good police service." Legislative Journal, supra, at 1687.

**11.** See, e. g., comments by Mr. ANDREWS: ". . . We are not in Russia today. We are in America. We are in the good Commonwealth of Pennsylvania . . .. Let us free ourselves from this stink of wire tapping." Legislative Journal, supra at 1688; by Mr. SHIELDS: ". . . When it comes to the place where you cannot conduct a conversation over the telephone when you are in terror, a man is helpless. Take the freedom away from the people and you have a great problem on hand." Id.

ty did not render the tapes admissible in state court. Accord, *United States v. Turner*, 17 Crim.L.Rptr. 2449 (9th Cir. July 24, 1975).

I am persuaded that the same rationale controls in the instant case. Section 5703 was not aimed solely at deterring Pennsylvania police practices; rather, it expressed hostility to wiretap evidence. The section does not except evidence seized legally in another jurisdiction. Neither case law nor legislative history convinces me that we should fashion such an exception. Our legislature has the power to protect our citizens from any invasion of privacy despite the decision by the New Jersey legislature to provide lesser protection.

In addition, I must emphasize that the active participation of Pennsylvania State Trooper Anthony enabled the New Jersey authorities to secure the warrant to institute the wiretap. Thus, by reversing the lower court's suppression order, the Majority is inviting the circumvention of our state law.

Therefore, I would affirm the order of the lower court.

JACOBS, J., joins in this dissenting opinion.

SPAETH, Judge, concurring and dissenting:

So far as Judge Hoffman is concerned, it is irrelevant whether the New Jersey wiretap was legal or illegal. Thus he says:

> Section 5703 [of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 *et seq.* 18 Pa.C.S. § 5703, as amended Dec. 27, 1974, P.L. 1007, No. 327, § 3,] was not aimed solely at deterring Pennsylvania police practices; rather, it expressed hostility to wiretap evidence. *The section does not except evidence seized legally in another jurisdiction.*
>
> Dissenting opinion at 474 of 245 Pa.Super., at 501 of 369 A.2d (emphasis added).

In contrast, for Judge Price, Judge Cercone, and Judge Van der Voort it is critical whether the New Jersey wiretap was legal or illegal. Thus Judge Price says:

We must conclude that the use in this Commonwealth of information secured through *a valid, legal, properly authorized wiretap in a foreign jurisdiction* is not in contravention of the Pennsylvania anti-wiretapping statutes, and that the *evidence seized in Pennsylvania under such a warrant is admissible.*

Majority opinion at 460, 369 A.2d at 494 (footnote omitted, emphasis added).

Judge Cercone:

The dissent states that by barring *the use of wiretap evidence lawfully obtained in another state,* . . . we would secure the public policy of Pennsylvania . . . I fail to see how.

Concurring opinion at 463, 369 A.2d at 495 (emphasis added).

And Judge Van der Voort:

I . . . believe it improper for our Courts to exclude *evidence obtained lawfully in one of our sister states* . . . .

Concuring opinion at 466, 369 A.2d at 497 (emphasis added).

Therefore, the question raised by the opinions of Judge Price, Judge Cercone, and Judge Van der Voort is, *"Was the New Jersey wiretap illegal?"* None of them, however, addresses this question. Each of them *assumes* that the wiretap was legal. Each of them, moreover, makes this assumption without any discussion. This surprises me, and will surprise the parties, for whether the New Jersey wiretap was illegal is a principal question that has been briefed and argued to us.

I am myself inclined to agree with Judge Hoffman's interpretation of Section 5703. However, I find the legislative history quite ambiguous. In these circumstances I am unwilling to rest my decision on an interpretation

of Section 5703. Instead, I prefer to consider whether the New Jersey wiretap was illegal, particularly since, as nearly as I can see now, it was illegal.

Section 12 f of the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A–12 f, provides:

No order entered under this section shall authorize the interception of any wire or oral communication for a period of time in excess of that necessary under the circumstances. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this act by making reasonable efforts, whenever possible, to reduce the hours of interception authorized by said order.

In *State v. Dye*, 60 N.J. 518, 291 A.2d 825, *application denied*, 409 U.S. 1004, 93 S.Ct. 457, 34 L.Ed.2d 297, *cert. denied*, 409 U.S. 1090, 93 S.Ct. 699, 34 L.Ed.2d 675 (1972), the New Jersey Supreme Court held that on the particular facts before it, a wiretap authorized for 30 days, from 10:00 a. m. to 3:00 p. m., Monday through Saturday, was not overbroad. The court concluded that the remedy for every conversation within those hours having been recorded was partial suppression, that is, suppression of those conversations "irrelevant" to the order authorizing the wiretap.

In 1975 the New Jersey legislature amended the New Jersey Act with a specific purpose of overcoming the decision in *State v. Dye*. Thus Section 21 of the Act was amended to provide:

Any aggrieved person . . . may move to suppress . . . on the grounds that:

. . . . . . . .

c. The interception was not made in conformity with the order of authorization *or in accordance*

*with the requirements of Section 12* . . . If the motion is granted, the *entire* contents of *all* intercepted wire or oral *communications obtained during or after any interception which is determined to be in violation of this act* . . . or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding.

§ 21 of the Act, *as amended* N.J.S.A. 2A:156A–21 (1975 Supp.). (Italics indicate portions added by 1975 Amendment).

Also, Section 12 of the Act was amended. That section has been quoted above. The amendment was the final clause of the minimization requirement, that there must be "reasonable efforts, whenever possible, to reduce the hours of interception authorized by said order." § 12 of the Act, as amended, N.J.S.A. 2A:156A–12 (1975 Supp.). The Commission statement accompanying the amendments explains:

8. (The present provision has been interpreted by some law enforcement officials to mean shutting the machine off as such communications arise.)

. . .

. . . . . . . .

13. If a motion to suppress the contents of an interception is granted, the Committee amendments provide that all of the interceptions made after that, both relevant and irrelevant, will be suppressed. This amendment is designed to overrule *State v. Dye,* 60 N.J. 518, 291 A.2d 825, as to those relevant interceptions made after a violation of the requirements of the order has taken place.

Commission's Comment, N.J.S.A. 2A:156A–1 *et seq.*

Here, the order authorized a wiretap for 24 hours a day, for a maximum of 15 days, to be conducted "in such a way as to minimize or eliminate the interception of communications other than the type described herein-

above," as required by Section 12 of the New Jersey Act. However, Officer Harding of the New Jersey State Police testified at the suppression hearing that the telephone was monitored 24 hours a day, by a total of 10 to 15 men, and that *every conversation* was transcribed. (N.T. 19–21, 24.) So far as appears, absolutely no attempt was made to comply with the minimization requirement either of the order or of the Act.

The legality of the wiretap was argued below but is not addressed by the lower court in its opinion. Therefore, the case should be remanded. On remand the lower court should make such factual determinations as may be necessary, and should decide the legality of the wiretap under the New Jersey Act.[1] *See* my dissenting opinion in *Commonwealth v. Houser*, 232 Pa.Super. 384, 334 A.2d 691 (1975). Then, on any subsequent appeal, we should be in a position to decide this case in a proper way.

I therefore concur with the majority that the order of the lower court should be reversed, but I dissent from the majority's reasoning and its outright reversal; I should reverse and remand with instructions to proceed as I have indicated.

---

1. Appellant has argued that the wiretap was illegal not only under Section 12 of the New Jersey Act, but for other reasons (which I have found it unnecessary to discuss): lack of notice of the wiretap, N.J.S.A. 2A:156A–16; divulgence of evidence beyond that authorized by the order; and violation of the custody provision of the Act, N.J.S.A. 2A:156A–14. On remand the lower court should also address the issues raised by these arguments.