**UNITED STATES of America**

v.

**Manfred DEREWAL.**

**Crim. No. 88–00098.**

United States District Court,
E.D. Pennsylvania.

Jan. 9, 1989.

---

Deborah J. Rhodes, Strike Force, for U.S.

A. Charles Peruto, Philadelphia, Pa., for Manfred Derewal.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Criminal defendant Manfred Derewal (Derewal) has moved to suppress electronic surveillance evidence in a criminal proceeding in which he is being held as a pretrial detainee charged with conspiracy to import into the United States one hundred seventeen gallons of P2P in violation of 21 U.S.C. § 963, the importation of P2P and the attempt to import P2P in violation of 21 U.S.C. §§ 952(a) and 960(a)(1). Defendant Derewal objects to the admissibility of the evidence on grounds that the wiretaps were obtained in violation of Costa Rican law and defendant Derewal's Fourth Amendment rights. On December 22, 1988, this court held a full evidentiary hearing on this motion in order to establish the involvement, if any, of the United States govern-

ment in the wiretap on the telephone of Mr. Derewal in Santa Cruz, Costa Rica.

## BACKGROUND

Drug Enforcement Agency (DEA) Agent Sandalio Gonzalez testified as to the following facts. Agent Gonzalez was posted in Mexico City, Mexico as the DEA group supervisor in that city. The DEA suspected defendant Derewal was engaged in the importation of illegal drugs, P2P, into the United States from Costa Rica. During the summer of 1984, Agent Gonzalez notified the Costa Rican authorities that Mr. Derewal was being investigated by the Philadelphia DEA for illegal drug trafficking. Based on its own investigation and knowledge of the DEA investigation, the Costa Rican authorities installed a wiretap on Mr. Derewal's telephone for a period beginning in June and ending in July of 1984.[1] At the invitation of the Costa Rican authorities, Agent Gonzalez went along on June 6, 1984 with the Costa Rican officials to serve the Court Order (previously obtained by the Costa Rican police) for the wiretap on the telephone company where the equipment for the wiretap was installed. Agent Gonzalez was not present during the actual interception of the conversations. After the wiretap was removed, the Costa Rican authorities provided Agent Gonzalez with original copies of the cassette tapes of the recorded English conversations. At the request of the Costa Rican authorities, Agent Gonzalez translated the recorded conversations from English to Spanish.

According to the Government, the Costa Rican authorities initiated the wiretap and collected the cassette tapes after Agent Gonzalez tipped the authorities that Mr. Derewal was involved in illegal drug trafficking. The Government avers that the Costa Rican authorities solely installed and maintained the recording equipment involved. Agent Gonzalez' testimony and the facts as presented by the Government are not contradicted.

## DISCUSSION

■ Neither the Fourth Amendment nor the exclusionary rule applies to searches conducted in foreign countries by foreign officials. *United States v. Staino*, 690 F.Supp. 406, 408–09 (E.D.Pa.1988); *see United States v. Callaway*, 446 F.2d 753, 755 (3d Cir.1971), *cert. denied sub nom. De Vyver v. United States*, 404 U.S. 1021, 92 S.Ct. 694, 30 L.Ed.2d 670 (1972). Two exceptions to this rule have developed: (1) where the involvement of the United States officials is so extensive in the search that the United States government and the foreign government are said to be involved in a "joint venture"; and, (2) where the action taken by the foreign officials shocks the judicial conscience.[2] *Staino*, 690 F.Supp. at 409 & n. 8; *Callaway*, 446 F.2d at 755; *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir.1987). Following the evidentiary hearing and a review of the record, I conclude that the DEA's involvement was insufficient to constitute a joint venture between the United States and Costa Rica.

■ The seminal case of *Stonehill v. United States*, 405 F.2d 738 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969) sets forth the framework within which this case should be analyzed. The principal relevant factors referred to in *Stonehill* needed to find a "joint venture" are not present in this case. In *Stonehill*, the court found no joint venture in a search conducted in the Phillipines despite the fact that a United States agent requested that a particular building be included in the list of premises to be searched and a diagram and memorandum prepared by a United States agent was used by the Phillipines authorities. *Id.* at 741, 746. The *Stonehill* court noted that the search was instigated and planned by the Phillipine government and United States agents were given permission to

---

1. Although the application for the wiretap requested authorization to tap and record Mr. Derewal's telephone for a period of one month, the Costa Rican judge granted a tap unlimited with respect to time.

2. Defendant contends that both of these exceptions are applicable to this case.

copy the seized documents *after* they were catalogued. *Id.* at 746.

In this district, courts have applied the same *Stonehill* principles. *See, e.g., Staino,* 690 F.Supp. 406, 409; *United States v. Scarfo,* No. 88–0003, slip op. at 5 (E.D.Pa. Oct. 27, 1988) [1988 WL 115805]. In *Scarfo,* Judge Van Antwerpen determined following an extensive hearing and review of a search conducted in the Dominican Republic that although the United States provided the Dominicans with information that led to a Dominican search of the defendant's residence, observed the arrest of the defendant, identified him for the Dominican authorities, and without solicitation, received seized goods at the Santo Domingo headquarters, no joint venture existed.[3] No. 88–0003, slip op. at 2–4.

Mr. Derewal contends that a joint venture did exist between the United States officials and the Costa Rican officials and cites to *United States v. Verdugo–Urquidez,* 856 F.2d 1214 (9th Cir.1988) in support of this contention. Yet *Verdugo–Urquidez* does not support Mr. Derewal's position. A joint venture was found to exist in *Verdugo–Urquidez* because the following facts were present in that case that were absent in the *Stonehill* decision:

> Here, it was the American authorities who planned and instigated the searches to secure evidence to be used in an American trial; there was no existing Mexican investigation of Verdugo–Urquidez then under way. *But see Stonehill v. United States,* 405 F.2d 738, 646 [sic] (9th Cir. 1968); *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). Second, the activities of the DEA took place before, during and after the search. *But see id.* Third, before the search began the MFJP informed the DEA that they could keep all evidence seized during the search. *But see id.* Fourth, it was the DEA who took the initiative in ensuring the search took place soon after Verdu-

go–Urquidez's arrest. *But see id.* Finally, when the Dea contacted the MFJP about the search, they were not only seeking assistance from the Mexican police, they were asking for permission to run their own operation.

856 F.2d at 1228.

 Merely supplying a tip to a foreign law enforcement agency, which then conducts an investigation and search leading to an American prosecution does not amount to a "joint venture". *See, e.g., United States v. Hawkins,* 661 F.2d 436, 456 (5th Cir.1981); *United States v. Heller,* 625 F.2d 594, 600 (5th Cir.1980). Nor does the act of a United States agent serving as a language interpreter for foreign authorities convert the search into a joint venture. *Birdsell v. United States,* 346 F.2d 775, 782 (5th Cir.1965), *cert. denied,* 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965).

In the instant case, the DEA's involvement was limited to notifying the Costa Rican officials of Mr. Derewal's suspected activities. At their own initiative, the Costa Rican authorities installed a telephone wire interception on Mr. Derewal's telephone. In distinction to the circumstances in *Verdugo–Urquidez,* the United States in this case had no control or management of any aspect of the wiretap. I conclude that no joint venture can be found between the United States and Costa Rica in this case.

 Defendant contends that the good faith exception to the exclusionary rule should not be extended to this case.[4] But even if this court had found that the overall involvement of the United States in the wiretap of Mr. Derewal's telephone was so substantial as to amount to a joint venture the exclusionary rule does not apply in these circumstances. The wiretap was placed pursuant to a properly obtained court order. Transcript of December 22, 1988 Hearing at 4–5. According to a Costa Rican narcotics officer, the procedures fol-

---

**3.** This case involves a suppression motion similar to a suppression motion filed before Judge O'Neill in *Staino,* 690 F.Supp. 406.

**4.** The good faith exception to the exclusionary rule created in *United States v. Leon,* 468 U.S.

897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) has been extended to cases involving the reasonable reliance on the representations of foreign officials regarding the interpretation of foreign law. *See e.g., Peterson,* 812 F.2d at 491–92.

lowed by the Costa Rican officials in obtaining the court order were in all respects in conformity with the usual procedures required by Costa Rican law pertaining to electronic intervention. *Id.* at 7. DEA Agent Gonzalez was specifically invited to come along by the Costa Rican officials to observe the procedure for applying for a court order. *Id.*

For these same reasons, I do not find that the conduct of the Costa Rican officials shocks the conscience of this court. *United States v. Maher*, 645 F.2d 780 (9th Cir.1981).

An appropriate order follows.

### ORDER

AND NOW, this 9th day of January, 1989, for the reasons set forth in the foregoing Memorandum, it is ORDERED that defendant's motion to suppress evidence is DENIED.