# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3172

_____

United States of America

*Plaintiff - Appellee*

v.

The-Nimrod Sterling, also known as Nimrod Sanders

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 13, 2016
Filed: July 6, 2016

_____

Before COLLOTON and GRUENDER, Circuit Judges, and BOUGH,[1] District Judge.

_____

GRUENDER, Circuit Judge.

Appellant The-Nimrod Sterling was convicted of impersonating a foreign diplomatic officer, in violation of 18 U.S.C. § 915, and of being a felon in possession

_____

[1] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[2] sentenced him to concurrent terms of 57 months' imprisonment on each count, to be followed by two years' supervised release. Sterling challenges these convictions, arguing that the Government presented insufficient evidence for a reasonable jury to convict him on either count. We affirm.

## I.

On October 1, 2013, Arkansas State Police Trooper Jeffrey Preston pulled over Sterling's vehicle for exceeding the speed limit. When Officer Preston approached the vehicle, he noticed two stickers on its bumper. One read "Republic of Conch Diplomat," and the other read "Diplomatic immunity. Do not detain." After informing Sterling of the basis for the stop, Officer Preston requested to see Sterling's driver's license, vehicle registration, and proof of insurance. At that point, Sterling gave Officer Preston only a card reading "Diplomatic Identification Card." When Officer Preston asked if Sterling also had a driver's license, Sterling gave him an Arkansas driver's license.

After conversing briefly with Sterling and a passenger in Sterling's vehicle, Officer Preston returned to his vehicle and further examined Sterling's diplomatic identification card. The card provided Sterling's name and photograph and identified Sterling as an "Ambassador" of the "Conch Republic." The reverse side of the card included a "Notice per Diplomatic Immunity," which stated that the bearer of the card was "Officially Immune From Traffic Infractions[,] Detention[,] Arrest[,] or Civil and Criminal Prosecution Absent His/Her Consent." Below that statement were several additional warnings regarding the bearer's rights as well as a fax number by which

---

[2] The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

"Law Enforcement" could "Fax a Complaint Against The Bearer for Our Investigation."

After examining the card, Officer Preston consulted his department's policies-and-procedures manual regarding treatment of individuals carrying this type of document. He also searched both the department manual and the United States Department of State website for the Conch Republic, but he did not find such a country in either source. According to Officer Preston, he then decided to "err on the side of caution" and issue Sterling a warning rather than "risk an international incident" by giving Sterling a ticket. Officer Preston issued tickets to all of the other drivers he pulled over for speeding during that shift.

On October 14, 2014, Agent Warren Newman of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") executed a search warrant at Sterling's residence in Pine Bluff, Arkansas as part of an ongoing investigation of Sterling's activities. Upon entering a bedroom occupied by Sterling and his wife, Agent Newman found a loaded 12-gauge shotgun with a shortened barrel lying against the wall on the same side of the bed as Sterling's wallet and other personal effects. Agent Newman also found two boxes of shotgun shells lying on a dresser on that side of the bed. Upon a further search of the residence, Agent Newman found several utility bills and receipts with Sterling's name and the address of the residence.

Following the search of Sterling's residence, Agents George Word and Joseph Mahoney of the United States Department of State Diplomatic Security Service ("DSS") executed an arrest warrant for Sterling. After waiving his rights, Sterling told the DSS agents that his mother had given him the shotgun "a couple of days ago" and had "asked [him] to grease it up."

Sterling was indicted on one count of impersonating a foreign diplomatic officer, in violation of 18 U.S.C. § 915, and one count of being a felon in possession

-3-

of a firearm, in violation of 18 U.S.C. § 922(g)(1). At trial, Officer Preston testified regarding the October 1 traffic stop, and Agent Newman and another ATF agent testified regarding the search of Sterling's residence, the discovery of the shotgun, and Sterling's arrest. Two witnesses who previously had worked for Sterling as security personnel testified that they had observed Sterling fire a shotgun in the backyard of his Pine Bluff residence and that this weapon matched the description of the shotgun found during the search of that residence. Finally, DSS Special Agent Mahoney testified regarding Sterling's statements during his post-arrest interview.

The jury found Sterling guilty on both counts. The district court sentenced him to concurrent terms of 57 months' imprisonment on each count, followed by 2 years' supervised release. Sterling appeals, arguing that the evidence was insufficient to support either of his convictions.

II.

We review "questions as to the sufficiency of the evidence de novo, 'viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" *United States v. Young*, 753 F.3d 757, 782-83 (8th Cir. 2014) (quoting *United States v. Gray*, 700 F.3d 377, 378 (8th Cir. 2012)). We will overturn a guilty verdict "only if no reasonable jury could have found guilt beyond a reasonable doubt." *Id*. at 783 (quoting *Gray*, 700 F. 3d at 378).

Sterling first argues that the Government's evidence was insufficient to support his conviction for impersonating a foreign diplomatic officer under 18 U.S.C. § 915. The statute provides that:

> Whoever, with intent to defraud within the United States, falsely assumes or pretends to be a diplomatic, consular or other official of a foreign government duly accredited as such to the United States and acts

as such, or in such pretended character, demands or obtains or attempts to obtain any money, paper, document, or other thing of value, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 915.

Sterling contends that the evidence was insufficient to support his conviction under this provision because the "government" that he purported to represent, that of the Conch Republic, is fictitious and therefore cannot be "duly accredited . . . to the United States."[3] *See id.* This argument misconstrues the statute. Although the phrase Sterling cites is ambiguous when quoted in isolation, "we read statutes as a whole." *See Samantar v. Yousuf,* 560 U.S. 305, 319 (2010) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). The word modified by "duly accredited" is "such," a pronoun that is repeated twice later in the sentence. *See* 18 U.S.C. § 915. Because individuals ordinarily do not"act[] as" or assume the "pretended character" of foreign governments, we read the word "such" as referring in each instance to a "diplomatic, consular or other official," rather than to a "foreign government." *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993))). This interpretation provides the most natural reading of the text and also comports with the statute's chapter and title, which refer to the "False Personation" of "Foreign diplomats, consuls, or officers." *See* 18 U.S.C. ch. 43; 18 U.S.C. § 915. Because the repeated word "such" refers to an official rather than a

---

[3] According to evidence Sterling submitted at trial, the original members of the "Conch Republic" were residents of the Florida Keys who in 1982 purported to secede from the United States in response to the establishment of a federal border patrol blockade on the major highway connecting the Florida Keys to mainland Florida. Following this act of "secession," members of the group claimed to be citizens of both the United States and an independent nation known as the Conch Republic. At trial, a member of the State Department's Diplomatic Affairs division testified that the Conch Republic is not a country recognized by the United States.

government, the statute prohibits an individual from pretending to be a duly accredited foreign official and contains no requirement that the government he purports to represent also be "duly accredited." *See* 18 U.S.C. § 915.

Other federal statutes provide further support for the interpretation of "duly accredited" as modifying "official" rather than "government." In various sections of the United States Code, Congress has described foreign officials as being "accredited," whereas foreign governments are "recognized." *See, e.g.*, 8 U.S.C. § 1101 (describing officials and employees who have been "accredited by a foreign government, recognized de jure by the United States"); 50 U.S.C. § 1801 (defining a "foreign power" as "a foreign government or any component thereof, whether or not recognized by the United States"); 18 U.S.C. § 922(y)(2)(B)(i) (describing "an official representative of a foreign government who is accredited to the United States Government").

In addition, we note that every circuit to have reached this issue has held that § 915 prohibits the impersonation of officials from non-existent countries. *See United States v. Hillman*, 610 F. App'x 574, 577 (7th Cir. 2015) (per curiam) (unpublished) (upholding the conviction of a defendant who avoided a traffic ticket by claiming to be a diplomat from the "Mu'ur Republic"); *United States v. Shaabu El*, 275 F. App'x 205, 207-208 (4th Cir. 2008) (per curiam) (unpublished) (upholding the conviction of a defendant who claimed to represent the country of "Atlan"); *United States v. Charczenko*, 1995 WL 7961, at *3 (6th Cir. 1995) (unpublished table decision) (upholding the conviction of a defendant who purported to represent what he claimed to be the fictitious "Nation of Israel"). Similarly, courts have held that a defendant need not claim to represent a specific country in order to be found guilty under the statute. *See United States v. Callaway*, 446 F.2d 753, 754-55 (3d Cir. 1971); *United States v. Solomon*, 586 F. App'x 124, 124 (4th Cir. 2014) (per curiam) (unpublished); *United States v. Ferroni-Carli*, 322 F. App'x 779, 781 (11th Cir. 2009) (per curiam) (unpublished).

Because a defendant need not purport to represent an "accredited" foreign government in order to be found guilty under § 915, the Government presented sufficient evidence to support Sterling's conviction. Officer Preston testified that after he stopped Sterling's vehicle, Sterling handed him a "Diplomatic Identification Card" identifying Sterling as an ambassador of the Conch Republic. Although Sterling did not specifically claim to be an official "duly accredited . . . to the United States," his presentation of this credential supported such an inference. *See Callaway*, 446 F.2d at 754 ("[A]ny misrepresentation designed to obtain something of value implies the representation that the status, which would produce the thing of value sought, exists in the person making the misrepresentation."). Furthermore, the card stated that, based on his status as a diplomat, Sterling was "officially immune from traffic infractions, detention, arrest, or civil and criminal prosecution." Officer Preston testified that this notice led him to give Sterling a warning rather than a speeding ticket. *See United States v. Rippee*, 961 F.2d 677, 679 (7th Cir. 1992) (recognizing this type of "forbearance" from prosecution as "something of value"). Based on this evidence, a reasonable jury could conclude that Sterling pretended to be an official of a foreign government in order to obtain a thing of value. *See* 18 U.S.C. § 915.

Sterling also argues that the Government presented insufficient evidence to convict him of being a felon in possession of a firearm because the evidence did not establish that he actually possessed the 12-gauge shotgun in question or that he knew that the weapon had been placed in his house. This argument lacks merit. The evidence at trial showed that ATF agents found the shotgun in a bedroom occupied by Sterling and in close proximity to Sterling's personal effects. Furthermore, two witnesses testified that on a prior occasion they had witnessed Sterling fire a gun with the same characteristics as the shotgun found in the bedroom. Finally, Sterling admitted that he possessed the firearm when he told the DSS agents that his mother "gave [him] the shotgun and asked [him] to grease it up." Accepting all reasonable inferences in support of the jury's verdict, we find that this evidence was sufficient

to demonstrate beyond a reasonable doubt that Sterling knowingly possessed the 12-gauge shotgun. *See United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007) (finding evidence sufficient to support defendant's possession of a firearm where police officers discovered the weapon in the defendant's apartment under the defendant's side of the bed and the defendant subsequently made a statement indicating his ownership of the gun).

## III.

For the reasons set forth above, we affirm Sterling's convictions.

_____