■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM SORENSON and DONALD COMPITELLO, Appellants.—Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Kings County, both rendered June 9, 1976, convicting both of them of two counts each of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, and conspiracy in the first degree, upon a jury verdict, and imposing sentence. Judgments reversed, on the law, and new trial ordered. Defendants, acting in concert, allegedly sold more than two pounds of cocaine to an undercover detective on June 5 and July 9, 1974. Defendants were convicted, *inter alia,* of criminal sale of a controlled substance in the first degree and conspiracy. At a prior trial of defendants on these charges, defendant Compitello asserted the defense of entrapment and testified in his own behalf. That trial ended in a mistrial when the jury was unable to reach a verdict. At the instant trial, defendant Compitello abandoned his entrapment defense and did not testify. However, as part of their direct case, the People introduced in evidence portions of Compitello's testimony at the prior trial against both defendants. Defendant Sorenson's request for limiting instructions, to the effect that the testimony should only be considered against Compitello, was denied. Since Sorenson had the opportunity to cross-examine Compitello at the first trial, his constitutional right to confront his accusors was not infringed (see *People v Moll,* 26 NY2d 1, cert den *sub nom. Stanbridge v New York,* 398 US 911). It was, therefore, not error to allow the introduction of this testimony at the second trial as against Sorenson (see *Matter of Barry M.,* 93 Misc 2d 882; *People v Chavers,* 82 Misc 2d 201; *Mason v United States,* 408 F2d 903, cert den 400 US 993; *United States v Brasco,* 516 F2d 816, cert den 423 US 860). A reversal is mandated, however, because of the introduction of highly prejudicial testimony, unnecessary to establish the crimes charged. First, evidence of crimes not charged in the indictment was freely admitted on the theory that it was relevant to the background and development of the conspiracy. Such evidence may be admitted where the other crimes are "inextricably interwoven with the crime charged in the indictment" (see *People v Vails,* 43 NY2d 364, 368, affg 56 AD2d 939; *People v Willis,* 52 AD2d 972; *People v Mitchell,* 40 AD2d 117). Further, where, as here, a conspiracy is charged, evidence of prior drug sales is admissible to show the "background and development" of a conspiracy to sell drugs (see *United States v Magnano,* 543 F2d 431, 435, cert den 429 US 1091) and the existence and aim of the conspiracy charged *(United States v Moten,* 564 F2d 620, cert den 434 US 959; *United States v Cohen,* 489 F2d 945). However, *People v Condon* (26 NY2d 139) teaches that revealing irrelevant "details" of a similar crime could constitute reversible error, even if some evidence of the other crime would be admissible to prove the crime charged. In *People v Cook* (42 NY2d 204, 208) the Court of Appeals recently reiterated the standards of admissibility for crimes not charged in the indictment: "It is axiomatic that evidence of uncharged crimes may be introduced only when the testimony is relevant and necessary to the prosecution's case *(People v Molineux,* 168 NY 264; see *People v Stanard,* 32 NY2d 143). Moreover, in determining the admissibility of such evidence, a balance must be struck between the probative value of the testimony in connection with the crimes charged and the danger of undue prejudice to the defendant *(People v Schwartzman,* 24 NY2d 241, 247). A defendant is entitled to have the jury determine his guilt or innocence

solely upon evidence tending to prove the crime charged and uninfluenced by irrelevant and prejudicial facts and circumstances *(People v Tassiello, 300 NY 425, 430-431; see People v Posner, 273 NY 184, 190).*" Evidence of the confidential informant's sale of jewelry to Sorenson in February, 1974 did establish the "background" of the conspiracy and demonstrated how the undercover detective and confidential informant gained Sorenson's confidence. Similarly, evidence that a $5,000 loan which the undercover detective made to Sorenson was a "down payment" for heroin was admissible. Negotiations for that loan were intertwined with the negotiations for the June 5, 1974 sale of cocaine. Further, Sorenson's counsel opened the door to that evidence when he insinuated in his opening that the $5,000 loan was improper and only demonstrated that it was the undercover officer who first "introduced the subject of narcotics in this case." However, the court should have charged that the jury's consideration of that testimony was to be limited to the questions of defendants' mental operation, intent and the existence of a conspiracy (see *United States v Torres,* 519 F2d 723, 727, n 12; *United States v Nathan,* 476 F2d 456, 460, n 10). On the other hand, the reference to a "shipment of a hundred kilos of heroin that was coming into [the country]" was highly prejudicial and constituted an "irrelevant detail" of another crime, the admission of which was condemned in *People v Condon* (26 NY2d 139, *supra).* Although the first reference to the 100 kilos was in response to Sorenson's counsel's charge that the evidence against them was so "flimsy" that the People had to obtain a court-ordered wiretap, the People could have rebutted that charge without reference to the 100 kilos. Further, evidence that defendants personally used cocaine and marihuana, the undercover detective's testimony that he saw two pistols, a ski mask and surgical gloves in Sorenson's apartment, as well as his testimony that Sorenson made a racial slur, was totally irrelevant and served only to prejudice defendants. In addition, Sergeant Buccino's comment, over objection, that the purpose of the operation was "to lead us into high heroin and cocaine dealers, the upper echelon [t]he target of the operation was William Sorenson", improperly implied that Sorenson was "upper echelon". Similarly, the confidential informant's testimony that he was shown pictures of "various drug dealers" and saw Sorenson's picture among them, implied that Sorenson was a known drug dealer. Finally, the District Attorney concedes that the trial prosecutor committed error when he elicited testimony from the confidential informant that at the end of the instant operation "there was a contract out on my life" and noted in summation that charges against the informant were "dismissed for his own safety" (see *People v Puglisi,* 44 NY2d 748). Notwithstanding the strong evidence presented by the prosecution, the totality of these errors mandates a new trial (cf. *People v Crimmins,* 36 NY2d 230). We have considered defendants' other arguments and find them to be without merit. Mollen, P. J., Damiani, O'Connor and Rabin, JJ., concur.