■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS VALENCIA, Appellant. [695 NYS2d 186] —Mercure, J. Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered July 27, 1998, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the first degree and conspiracy in the second degree.

In October 1997, Art Claudio was a Detective with the City of Mount Vernon Police Department assigned to work undercover with the Drug Enforcement Agency task force, a collaborative effort of Federal, State and local police agencies investigating middle to high level drug traffickers. At that time, Claudio came in contact with a confidential informant who was familiar with defendant and his associate, Jaime Grajales, and who agreed to assist Claudio in purchasing drugs from them. An initial meeting was set up for November 18, 1997 at a restaurant in Westchester County. Although Claudio expected to meet both defendant and Grajales, only the latter appeared. At that meeting, Claudio and Grajales discussed the "drug business" and Grajales explained how he went about smuggling drugs and money in and out of the country in Kahlua bottles. Grajales indicated an interest in "going back into the drug smuggling business" and utilizing Claudio as a local outlet. The meeting concluded with the two exchanging telephone and pager numbers and Grajales agreeing to check on certain drug prices and get back to Claudio.

At the next meeting, which took place on December 6, 1997, Claudio and Grajales discussed a possible sale of 10 kilos of cocaine and Grajales disclosed that defendant, whom he referred to as El Negro, was his partner. Further meetings took place between Claudio and Grajales* on December 9 and December 12, 1997. On the latter occasion, Grajales indicated that he knew of a source who could supply up to three kilos of heroin. Claudio expressed interest in buying some of the heroin and the meeting concluded with the agreement that Grajales would find out just what drugs were available. The two had some further telephone conversations concerning the. heroin purchase and another meeting was scheduled for January 5, 1998.

On that date, Grajales paged Claudio in an attempt to

---

* The confidential informant was also present at the meetings between Claudio and Grajales but had a passive role.

confirm their plans, indicating that he could be reached at 914-791-4826, which Claudio knew (and other evidence established) to be defendant's telephone number. The meeting then took place, and Grajales told Claudio that he had spoken with his partner and they had some cocaine to sell. Claudio stated that he was willing to purchase five kilos of cocaine, and the two agreed to carry out the deal the next day at a specified grocery store in Sullivan County. On January 6, 1998, Claudio and Grajales met at the prearranged location. At that time, Grajales indicated that they would have to go to a nearby disco club in order to complete the deal. Claudio refused, so Grajales left in order to make a telephone call. He went to a nearby deli and made a telephone call to 914-791-4826. Grajales returned and indicated that the deal had to take place at the disco club. As a result, the transaction was aborted. Grajales told Claudio that he would be in touch.

At this point, Claudio and his task force associates decided that if they were going to pursue this investigation, they would have to "go to the next level" by trying to get an introduction to defendant directly. Accordingly, on February 3, 1998, Claudio had the confidential informant call 914-791-4826; he got defendant on the phone and then handed it over to Claudio. In the course of the ensuing conversation, defendant made reference to the failed transaction of January 6, 1998 and told Claudio that they should get together and talk. The two then met at the China Buffet restaurant in Sullivan County where they were formally introduced by the confidential informant. The conversation immediately turned to the failed deal. Defendant asked what the problem was and Claudio explained that he did not know who was going to be at the disco club and whether it was going to be crowded. Defendant stated that he had "total control" of the traffic at the disco. He also stated that in the same time period he had done a five kilo deal and there was no problem. Claudio expressed his preference that at least the first deal take place at a neutral location, even at the China Buffet. Defendant acquiesced and said the first deal would be for two kilos of cocaine, to take place at the China Buffet, on a date and at a price to be agreed upon later.

Claudio and Grajales subsequently set the deal for February 10, 1998. Initially, Grajales insisted that it take place at the disco; however, after Claudio stated that defendant had agreed upon the China Buffet as the location, Grajales acquiesced. Grajales and Claudio met at the agreed time and place, and Grajales stated that one kilo of cocaine was in his car and the second was with El Negro, about a half hour away. With

Grajales' permission, Claudio inspected the vehicle and found the cocaine. Grajales was then arrested. Analysis showed that the drugs in Grajales' car consisted of 994.32 grams of cocaine.

We first reject the contention that the jury's verdict finding defendant guilty of criminal sale of a controlled substance in the first degree and conspiracy in the second degree was against the weight of the evidence. When considering whether a verdict is against the weight of the evidence, this Court must review the evidence in a neutral light and, if a different finding would not have been unreasonable, make its "own independent determination of the relative probative value of the inferences that may be drawn from the testimony" (*People v Jefferson*, 248 AD2d 815, 817, *lv denied* 92 NY2d 926; *see, People v Bleakley*, 69 NY2d 490, 495). Great deference is to be accorded to the fact-finder's resolution of credibility issues based upon its superior vantage point and its opportunity to view witnesses, observe demeanor and hear the testimony (*see, People v Bleakley, supra,* at 495) and the verdict will not be set aside unless clearly against the weight of the evidence (*see, People v Perron*, 172 AD2d 879, 880, *lv denied* 77 NY2d 999).

Viewed in the light of the governing standard and the chronology of events as previously set forth, we are not persuaded that the jury's verdict is against the weight of the evidence. Although the great majority of Claudio's contacts were with Grajales, the trial evidence supported the inference that defendant not only acted in concert with Grajales but actually controlled the conspiracy and directed the drug sale that took place on February 10, 1998. Defendant's alibi evidence and Grajales' testimony that his confederate was Carlos Bernal, the owner of the deli where Grajales went to use the telephone at the time of the aborted sale on January 6, 1998, and not defendant, merely created credibility issues that the jury was entitled to and obviously did resolve against defendant.

Next, we reject the contention that County Court erred in admitting evidence of defendant's prior uncharged crime. As previously noted, Claudio met with defendant on February 3, 1998 at the China Buffet restaurant. At that time, the two had a conversation about the aborted sale of January 6, 1998 and Claudio's concern about having the sale take place at defendant's disco club. Claudio testified that defendant told him that he had sold five kilos of cocaine to a customer from Buffalo during the same time frame. In view of defendant's alibi defense and his tactic of insulating himself from contact with prospective drug purchasers by using Grajales as his interme-

diary, we agree with the People that the proffered testimony was properly admitted to establish the " 'background and development' of a conspiracy to sell drugs * * * and the existence and aim of the conspiracy charged" (*People v Sorenson*, 70 AD2d 892 [citation omitted]) as well as defendant's intent to sell drugs (*see, People v Kanston*, 192 AD2d 721, *lv denied* 81 NY2d 1074; *People v Tune*, 103 AD2d 990, 992; *People v Rose*, 84 AD2d 645, *affd* 57 NY2d 837). As for defendant's related claim that he was improperly denied a *Ventimiglia* hearing, we note that the People put defendant on notice of their intention to offer evidence that defendant discussed sales of cocaine other than the one that took place on February 10, 1998 and defendant requested and was granted a *Ventimiglia* hearing. Nonetheless, he proceeded to trial without the hearing having been conducted and raised no objection to County Court's failure to conduct it. Under the circumstances, we conclude that defendant waived his right to the *Ventimiglia* hearing.

Further, we are not persuaded that County Court erred in imposing consecutive sentences on the convictions for criminal sale of a controlled substance in the first degree and conspiracy in the second degree. "The imposition of consecutive sentences was permissible here because the offense of criminal sale of a controlled substance in the [first] degree is not a material element of the offense of conspiracy" (*People v Feingold*, 125 AD2d 587, *lv denied* 69 NY2d 880; *see, People v Ortiz*, 256 AD2d 424; *People v Cordoba*, 208 AD2d 420, *lv denied* 84 NY2d 1010; *People v Martinez*, 198 AD2d 197, *lv denied* 82 NY2d 927; *People v Rizo*, 169 AD2d 491, *lv denied* 77 NY2d 1000). Finally, although the sentences of 25 years to life for the criminal sale conviction and 8$^1$/$_3$ to 25 years for the conspiracy conviction are severe, we cannot say in the circumstances of this case that they are harsh and excessive (*see, People v Morgan*, 253 AD2d 946, *lv denied* 92 NY2d 950).

Defendant's remaining contentions are either unpreserved for our review or have been considered and found to be lacking in merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is affirmed.